Moore *v.* Hoisington et al.

JOHN M. MOORE

*v.*

JASPER A. HOISINGTON *et al.*

1. CHANCERY JURISDICTION — *contested elections.* A court of chancery has no jurisdiction to inquire into the validity of elections.

2. Nor will such jurisdiction be conferred by the mere omission of the particular case from the operation of the general law on the subject of contested elections.

3. DEMURRER TO BILL — *admits the allegations.* A general demurrer to a bill in chancery admits all the facts therein stated, to be true.

WRIT OF ERROR to the Cook Circuit Court.

The plaintiff in error exhibited his bill in chancery, in the court below, and set forth therein that an election was held on the 4th day of November, 1862, in pursuance of law, for town officers for the town of South Chicago, Cook county; that said town is divided into nine election precincts, in each of which the polls were opened, boards of election qualified, and votes received for the different town officers; that said election was conducted according to the usual custom in said county, under the supervision of three judges or inspectors of elections, and two clerks, at each poll, and each of said boards kept two ballot boxes, in one of which it was designed to put the ballots for State and county officers, and members of Congress and the Legislature, and in the other, ballots for

town officers; that the two clerks kept two poll lists, which were duplicates of each other, on which was entered the name of each voter, without discrimination as to whether he voted one or both ballots, each voter having the right to cast both if he chose; and after the polls were closed, the ballots were counted separately, and town ballots placed in a paper bag, sealed up, and delivered to the town or county clerk, and the general ballots in another paper bag, likewise sealed, and delivered to the county clerk.

The bill shows that votes were cast at said election with other officers, for five justices of the peace, and attaches a tabular statement showing the result as exhibited by the returns for justices, except as hereafter stated, which is marked Exhibit A, whereby it appears, and the fact is, that Aaron Haven, Calvin De Wolf, Nicholas Berdell and the plaintiff in error, were elected justices, and it further appears therefrom that Charles McDonell was also elected, but whether such is the fact or not he does not state, but he had been informed and believed that Charles McDonell was elected instead of Jasper Hoisington, who claims to be elected.

. The tabular statement shows that Haven received 2,927 votes, De Wolf, 2910; Milliken, 2,907; Moore, 2,896; Berdell, 2,887; McDonell, 2,873; Hoisington, 2,869; Caldwell, 2,851; Summerfield, 2,850; and Diehl, 2,837.

The bill shows that returns were delivered to Leonard Lamperts, who was then town clerk, on or before the 10th November, 1862, from all the precincts in said town.

The bill avers that it so happened, by design or mistake of the judges, that ballots were interchanged and put in the wrong box, and when the polls were closed, ballots of both kinds were found in the wrong box, and at some of the polls such ballots were counted and returned, and at others they were rejected, and of the latter class, at the poll for the second precinct of the second ward, the judges found thirty-two ballots for town officers in the box intended for the ballots for general officers, which they did not count or include in their usual certificate and return (and at the same time found thirty-five ballots for general officers in the box

intended for town ballots,) but counted the same, sealed them up in an envelope, deposited them in the county clerk's office, and made a special return, stating the facts, to the town clerk, and of these thirty-two ballots the plaintiff in error received twenty-five, Hoisington ten, Haven, McDonell, Berdell, and Caldwell, each twenty-five; De Wolf, Milliken, Summerfield, and Diehl, each seven votes, for justice of the peace, and at the poll for the first precinct of the fourth ward, twenty-five ballots were cast for Haven, Berdell, Caldwell, McDonell and the plaintiff in error, and seven for their competitors, which were rejected, not counted or returned; and counting these votes, in addition to those shown by the tabular statement, the majorities of Haven, Berdell and the plaintiff in error will be increased, and the said McDonell will be entitled to the office of justice instead of Milliken, who now claims to be elected, from the declared result.

The bill shows that the town clerk refused, for insufficient reasons, to call two justices and canvass the returns, until he was compelled by a writ of mandamus given by the Cook Circuit Court, and after said writ was ordered, on the 2nd day of December, 1862, he called to his assistance two justices and canvassed the returns and declared the result, and in so doing they held that the certificate of returns from the first precinct of the second ward showed that 369 votes were cast for A. M. Moore, for the office of justice, and none for the plaintiff in error, John M. Moore, and rejected said votes from the count for the plaintiff in error; they declared that Haven received 2,927 votes, Berdell 2,887, McDonell 2,873, each, and were elected, and further, that the plaintiff in error received 2,527 votes, Caldwell 2,851, Summerfield 2,850, Hoisington 2,869, Diehl 2,837, and A. M. Moore 369 votes for the same office.

The bill shows that the plaintiff in error had no notice of the canvass or knowledge thereof until December 4, 1862, and had no information that any error existed in the return from the first precinct of the second ward until December 5, 1862.

The bill avers, that the 369 votes were in fact cast for the plaintiff in error; that the ballots were counted for him; that

the tally sheet and poll books, with the certificates thereto attached, show that said votes were cast and counted for the plaintiff in error, and that no ballots were cast for A. M. Moore, and avers that the name A. M. Moore was written by one of the clerks of election at said poll for the name of the plaintiff in error in preparing a certificate of the result to be sent to the town clerk, by mistake, and that said mistake was not discovered until the canvass aforesaid.

The bill avers, that except for said mistake the plaintiff in error would have been declared elected instead of Charles McDonell, and if the said ballots, rejected because in the wrong box, had been counted, the said Charles McDonell would have been declared elected instead of Isaac L. Milliken, but by reason of said mistakes, certificates of election have been given said McDonell and Milliken, and they, with the said Jasper A. Hoisington, are now claiming the right to exercise the powers and perform the duties of said offices.

The bill prays that the returns of the votes cast at said election may be produced and canvassed, the ballots cast, properly counted, and the result declared, and order and decree made as equity shall require; and that said defendants, who may be ascertained to be exercising the duties of the office of justice of the peace illegally, may be enjoined from performing said duties.

There was a general demurrer to the bill; the court below sustained the demurrer, and dismissed the bill, at the costs of the plaintiff in error, who now insists that the Circuit Court erred in sustaining the demurrer to the bill, and in dismissing the bill and rendering judgment against him.

Mr. W. C. Goudy, for the plaintiff in error.

Mr. A. Garrison, for the defendants in error.

Mr. Justice Breese delivered the opinion of the Court.

The bill in this case, as appears by the record, was filed to correct an alleged mistake in the canvass of certain votes

given for town officers at an election held on the fourth day of November, 1862, for the town of South Chicago, in the county of Cook. A general demurrer was filed to the bill, which was sustained, and the bill dismissed. The cause is brought here by writ of error, and the error assigned is, in sustaining the demurrer and dismissing the bill.

All the facts stated in the bill are admitted by the demurrer to be true, and the question arises, has a court of chancery, on those facts, any jurisdiction to try the cause and afford the relief sought?

We have been favored with no authorities on the point by either party, save a reference to the case decided by this court, of *The People ex rel. Mitchell* v. *Warfield*, 20 Ill. 159. That case was an application for a mandamus to compel the defendant, who was the clerk of Saline county, to issue a marriage license, application having been made to him at Harrisburgh, then claimed to be the county seat. There was a controversy which was the county seat, Raleigh or Harrisburgh, and an injunction had been granted restraining the county officers from transacting official business at Harrisburgh, but requiring them to hold their offices at Raleigh. Harrisburgh claimed to have received a majority of the votes for the county seat, at an election held under the act of February 7, 1857, entitled, " An act to re-locate the county seat of Saline county." The case made by this bill for an injunction, was pending and undetermined when the application for the mandamus was made, and the court said, we would not undertake, under such circumstances, to say that the county clerk was subject to a mandamus, but would leave the rights of the contesting towns to be determined in the chancery suit, the bill therein being so framed as to reach the merits of the controversy.

We find in some States, by express enactment, courts of chancery can inquire into the validity of elections by bill; but we have found no case in which it has taken jurisdiction of such a case under its general powers. Nor do we perceive a necessity for it, the general election law of the State being sufficient to meet most cases, if not this very case. Sections forty-two to fifty, inclusive, of the general election law, would

seem to provide for all cases of contested election, which were deemed by the General Assembly of sufficient importance to be provided for. Scates' Comp. 472.

If this case is not exactly met by that law, we are disposed, rather than to exercise a doubtful power, to consider this particular case as omitted from the operation of the general law, but not, on that account, conferring jurisdiction upon this court.

Finding no case in which a court of chancery has exercised jurisdiction on the facts stated, we must affirm the decree.

*Decree affirmed.*