THE STATE OF KANSAS, *ex rel.*, v. THE BOARD OF COMMISSIONERS OF BUTLER COUNTY.

1. CASE, *Followed.* The case of *Gordon v. The State*, 4 Kas. 489, referred to, and followed.

2. COUNTY-SEAT ELECTION; *Valid Statute.* The provisions of chapter 91, Laws of 1883, requiring more than a majority of the electors to petition before an election shall be called for the relocation of a county seat, and to define who are to be considered legal petitioners, are valid and constitutional.

3. RELOCATION OF COUNTY SEAT; *Election, When Ordered.* Under the provisions of chapter 91, Laws of 1883, in all cases where the county seat of any county in this state has been located by a vote of the electors of such county, and buildings have been erected at such county seat for county purposes, the cost of which has been at least $10,000, or when such county seat has been eight years or more continuously at any one place by a vote of the electors of the county, the board of county commissioners is to order an election for the relocation of any such county seat only upon a petition of two-thirds of the legal electors of the county.

*Original Proceedings in Mandamus.*

ACTION brought in the name of *The State of Kansas*, on the relation of the attorney general, against *The Board of*

*Commissioners of Butler County,* and the members of the board, to compel it to examine and act upon a petition presented to the board, and if found sufficient, to call an election to vote upon the relocation of the county seat. The case is presented for decision on the following agreed statement of facts :

"1. This suit was commenced in this court on the 3d day of May, 1883.

"2. There was filed in the office of the county clerk of Butler county, on the 2d day of April, 1883, a petition asking and requesting the board of county commissioners of said county to call a special election for the relocation of the county seat of said county; said petition purported to contain the names and signatures of 2,194 of the legal electors of said county, and on the 9th day of April, 1883, there was filed in the office of said county clerk a remonstrance or counter-petition asking that such election be not called, and said remonstrance or counter-petition purported to contain the names of and be signed by 2,731 of the legal electors of said county.

"3. The number of the legal electors of said county, as shown by the assessment rolls and personal-property statements, as returned by the several township and city assessors of said county for the year 1882, was 4,252, the returns for 1883 not being at that time made.

"4. Said petition did not designate any town or place to which said county seat should be removed and relocated.

"5. Said petition was presented to the board of county commissioners, by and on behalf of the petitioners, on the 10th day of April, 1883, at its regular session, all the members of said board being present, and said board was requested to examine the same and to order an election for the relocation of the county seat of said county thereon, in accordance with law and in accordance with the prayer of said petition. At the same time there was presented to the county board said remonstrance or counter-petition, and the county board was asked not to call an election, because the law had not been complied with.

"6. The number of electors that purported to have signed said petition was not and is not two-thirds of the legal electors of said county, as shown by the assessment rolls as returned by the several township and city assessors of said county for the year 1882.

"7. In 1864 there was an election held for the permanent location of the county seat of said county, at which election El Dorado was chosen as the county seat by the vote of the legal electors of said county, and the county seat was located at El Dorado in 1864 in accordance with said vote, and has been located and remained there continuously from that time to the present.

"8. There has not been an election held for the location or relocation of the county seat of said county for more than ten years last past.

"9. There have been buildings erected at El Dorado, the county seat of said county, for said county, at a cost to said county of $10,000, without submitting the same to a vote of the electors thereof.

"10. Upon the presentation of the petition and remonstrance as aforesaid, the following among other facts were found to exist, and the following proceedings were had:

"'STATE OF KANSAS, COUNTY OF BUTLER, ss.—*In the Matter of an Application Calling for an Election for Relocating the County Seat of Butler County, Kansas.*—Whereas, on the 2d day of April, 1883, there was filed in the office of the county clerk of Butler county, Kansas, a petition purporting to be a petition signed by 2,194 legal electors of Butler county, Kansas, praying for the calling of an election for the relocation of the county seat of Butler county, Kansas, and whereas, on the 10th day of April, 1883, said petition was presented to the county commissioners of the county, T. O. Shinn and J. G. Waters appeared for the petitioners, asking for the calling of said election, and at the same time appeared before said board H. T. Summer, A. L. Redden, A. L. L. Hamilton and E. N. Smith, and presented certain remonstrances purporting to be signed by 2,731 legal voters of said county against the calling of said election; and now, to wit, on the 11th day of April, 1883, the said board, having been advised in the premises and having taken the matter under consideration, does find and hold that it is governed and controlled in said matter by the law of 1883, which repeals the prior law in relation to the calling of elections for relocating county seats, and that a petition which is admitted and which the board finds does not comply with the provisions of the law of 1883, and which does not contain two-thirds of the legal electors, as provided in the law of 1883, cannot be considered by this board. The board therefore denies said application, and refuses to call said election on said petition, and refuses to examine said petition to see whether it complies, as it purports to do, with the law repealed by the law of 1883.' "

The opinion herein was filed at the session of the court in February, 1884.

*T. O. Shinn,* and *Waters & Ensminger,* for plaintiff.

*A. L. Redden, A. L. L. Hamilton,* and *E. N. Smith,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: From the agreed statement of facts it appears, among other things, that in 1864 the county seat of Butler county was located at El Dorado by a vote of the electors of that county, and has been continuously there ever since — over nineteen years; that county buildings have been erected at the county seat at a cost to the county of $10,000, without submitting the same to a vote of the electors of Butler county; that on the 10th day of April, 1883, there was presented to the defendants, as the board of county commissioners of that county, a petition purporting to be signed by 2,194 legal electors of the county, asking that an election be called for the relocation of the county seat; that at the same time there was presented a counter-petition signed by 2,731 legal electors of the county, asking that no such election be called; that by the assessment rolls and personal-property statements for 1882 the number of legal electors of the county was 4,252; that this action was commenced on the 3d day of May, 1883; and that the defendants declined to call the election as prayed for in the petition presented to them.

It is claimed in the case on the part of the relator, that ch. 91, Laws of 1883, does not apply, for two reasons: *First,* As the petition was filed in the clerk's office of Butler county on April 2, 1883, before the act of 1883 had been published or taken effect, that it was a "proceeding commenced" under the law in force at the time it was filed, and should have been completed under that law. Although the petition was filed April 2, 1883, it was not presented until April 10, 1883, and ch. 91, Laws of 1883, took effect on April 5, 1883. Even if the filing of the petition on April 2, 1883, was the commencement of the "proceeding," the theory of counsel for the relator is disposed of by the decision of this court in the case of *Gordon v. The State,* 4 Kas. 489. The reasoning of that decision has never been satisfactory to the writer; nevertheless, it is the opinion of the majority of the members of this court that it should be followed. This decision was rendered

in 1868. Since that time it has been unchallenged, and the legislature has given sanction thereto by failing to enact any law changing the rule therein announced.

*Second,* It is urged that the law of 1883 is null and void, (1) because its provisions require more than a majority of the voters to carry the proposition; (2) because it is illegal, meaningless, and void, as it does not change or repeal § 6, ch. 26, General Statutes of 1868.

It is unnecessary to discuss these various objections. It is clearly within the power of the legislature to require more than a majority of the electors to petition before an election shall be called for the relocation of a county seat, and to define who are to be considered legal petitioners. The law of 1879 required in a case like the one presented a petition of a majority of the legal voters only. The law of 1883 requires in such a case a petition of two-thirds of the legal electors. In this respect, whatever may be said of the other objections taken, the act is constitutional. It was in full force at the time the petition was presented to the defendants for their action. The act of 1883 declares no petitioner shall be deemed a legal elector unless he be an elector, and his name appear on the last assessment rolls of the several township and city assessors of the county. The assessment rolls of Butler county for the year 1882 showed the number of electors of the county to be 4,252. The petition was signed by 2,194 electors only. This was not two-thirds of the legal electors of the county; therefore the peremptory mandamus must be refused.

BREWER, J.: I concur in the foregoing opinion and decision. I do this without fully subscribing to all that is said in the opinion in 4 Kas. 489; and yet, so far as the decision in that case is exactly in point, I think it should be followed, on the principle of *stare decisis.*

VALENTINE, J.: I concur in the decision of this case, but my concurrence is principally upon the same grounds expressed in the opinion of Mr. Justice BREWER.