THE STATE OF KANSAS, *on the relation of D. C. Lewis, County Attorney within and for Pratt County*, v. ARTHUR J. EGGLESTON, EBENEZER N. WATSON, CHRISTIAN HOWALD, *et al.*

1. REMOVAL OF COUNTY SEAT; *Petition; Striking off Names.* Where a petition is presented to the board of county commissioners of a county for the removal and relocation of a county seat, the commissioners should strike therefrom the names of all persons who make application to have their names stricken off, before final action is taken upon the petition. If this is not done, the signers of the petition who asked their names to be stricken off should not be counted by the board of commissioners in determining the number of petitioners for the removal and relocation of the county seat.

2. INSUFFICIENT PETITION; *Canvass of Votes; Injunction.* Where a petition is presented to the board of county commissioners for the removal and relocation of a county seat, and after disregarding all of the ineligible petitioners and the signers who asked their names to be stricken off before final action was taken thereon, the petition contains less than three-fifths of the legal electors of the county whose names appear upon the last assessment rolls of the county, such petition is wholly insufficient upon which to order an election for the relocation of the county seat; and the county attorney of the county in which the petition is presented may, in the name of the state, maintain an action to enjoin the board of county commissioners from canvassing the votes cast at and returned from the several precincts of the county at an election ordered upon such a petition.

3. TEMPORARY INJUNCTION; *Undertaking.* A party applying for a temporary injunction need not execute the undertaking; it is sufficient, if he furnish one executed by sufficient securities.

4. ———— *Valid Undertaking.* Where an injunction suit is brought by the county attorney of a county, in the name of the state, and a temporary injunction is allowed at the commencement of the proceeding, an undertaking furnished by the plaintiff, but signed only by sufficient securities, is valid and binding.

5. Bond—*Amount, Assumed to have been Fixed.*  Where the probate judge of a county allows a temporary injunction, but does not expressly state in his written order the amount of the undertaking to be given, but the undertaking, which is given and accepted on the day of the allowance of the order, recites upon its face that the injunction was granted upon the condition that the plaintiff give a bond to the defendants in the sum of five hundred dollars, it must be assumed, in the absence of any other showing, that the probate judge fixed the amount of the undertaking, and that the bond was given and approved in pursuance of his order.

## *Error from Pratt District Court.*

On August 19, 1880, an election for the location of the county seat of Pratt county was held, and at such election the county seat was located at Iuka.  On August 13, 1885, a petition for the relocation of the county seat of the county was presented to the board of county commissioners, asking for an election for the relocation of the county seat.  The number of names of voters of Pratt county appearing upon the last assessment rolls for the cities and townships of the county is from 1,600 to 1,900.  The petition presented purported to contain 1,581 names, and the city of Pratt was named as the place to which the county seat was to be removed.  Upon the presentation of the petition to the county board, the board examined the same, decided it was sufficient, and ordered an election in accordance with the prayer thereof, to be held September 21, 1885.  In pursuance of this order, notice of the election was given.  On September 1, 1885, however, the county commissioners again considered the petition first presented August 13th, and made a new order calling an election for the relocation of the county seat of Pratt county and the removal of the same from Iuka to the city of Pratt, to be held October 1, 1885.  On September 7, 1885, the state of Kansas, on the relation of D. C. Lewis, county attorney of Pratt county, commenced an action in the district court of the county against Arthur J. Eggleston, Ebenezer N. Watson and Christian Howald, the county commissioners of the county, and also against the various persons composing the boards of registration of the different precincts of the county, to restrain

them, as registration boards of their respective townships, from performing their duties as such boards, and to restrain the board of county commissioners from canvassing the returns of the election to be held on October 1, 1885, upon the question of the relocation of the county seat. The petition alleged among other things, that of the 1,581 persons whose names appeared on the pretended petition, not more than one-half really signed the petition or authorized any person to sign the same for them; that 466 of such persons, subsequent to the alleged signing of the same, had withdrawn their names from the petition; that the names of 24 of such persons appeared upon the pretended petition twice; that 488 of such persons were not legal petitioners of the county of Pratt; that in fact, less than one-third of the number of legal electors of Pratt county, whose names appeared upon the last assessment rolls of the county, had signed the petition; that 170 of such persons were induced to sign the petition by false and fraudulent representations made to some of the signers by Christian Howald, one of the county commissioners, to the effect that the pretended petition was a road petition; that the same was a petition for a new township, and to others the statement was made that it was a petition to relocate the county seat, but other places than Iuka and Pratt city could be voted for at such election. The petition also stated, among other things, that on August 20, 1885, a petition signed by 1,236 legal electors, whose names appeared upon the last assessment rolls of the county of Pratt, was presented to the board of county commissioners of that county, in regular session, praying that an election be called for the relocation of the county seat, and designating the city of Saratoga as the place to be voted for; that the said petition contained the names of more than three-fifths of the legal electors of the county of Pratt, whose names appeared upon the last assessment rolls aforesaid, and that the board of county commissioners refused to act upon the petition.

On the day the action was commenced, the judge of the district court of Pratt county being absent from the county,

the probate judge of that county granted a temporary injunction, as prayed for in the petition of the relator, with which the defendants were served. Upon the same day, the following undertaking in the case was given and approved, (court and title omitted:)

"Whereas, an action has been commenced in the district court aforesaid, wherein the state of Kansas, on the relation of D. C. Lewis, county attorney of Pratt county, Kansas, is plaintiff, and Arthur J. Eggleston and others are defendants, and an injunction granted thereon, upon the plaintiff giving a bond to the defendants in the sum of five hundred dollars, to be approved by the clerk of the court, now we, the undersigned, undertake in the sum of five hundred dollars to secure the party injured in the damages he may sustain if it be finally decided that the injunction ought not to have been granted.

"Dated this 7th day of September, 1885.

J. H. D. ROSAN.
JAMES TEMPLE.

This bond approved.—J. W. ELLIS, *Clerk.*"

On September 8, 1885, the defendant served notice on the relator of a motion to vacate the temporary order of injunction, and that the motion would be heard before the district judge, at Great Bend, on September 12, 1885. On that day, the parties to the action visited Great Bend, Barton county, for the purpose of disposing of the motion, but found the district judge absent; thereupon the defendants served notice upon the relator that the motion to dissolve the injunction would be heard before the district judge, at Lyons, on the same day, and the district judge modified the order of injunction by vacating the same as to all of the defendants, except the board of county commissioners. No exception was taken to this order. The further hearing of the motion as to the other defendants was continued until September 18, 1885, to be heard at Iuka, in Pratt county. On September 17, 1885, the relator filed the following amendment to his petition, verified by his own oath:

"And now comes the said relator, and by leave of the court just had and obtained files this an additional statement of facts in amendment of the petition now on file in this cause, and

alleges that of the 1,581 names appearing on said pretended petition mentioned and referred to in said petition on file in this cause, and on which said election called by said Eggleston and Howald on the first of September, 1885, was based, 466 of the same requested the board of county commissioners of Pratt county not to consider their signatures in their consideration of said pretended petition, and before the first day of September, 1885, withdrew their names from said pretended petition, of which said county commissioners had due notice before said first day of September, 1885. A list of said withdrawn names is hereto attached, marked 'A,' and made a part hereof (list omitted); that of the 1,581 names appearing on said pretended petition as aforesaid, 24 of the same appear thereto twice, a list of which is hereto attached, marked 'B,' and made a part hereof (list omitted.)

"Of the 1,581 names appearing on said pretended petition as aforesaid, 31 of same are now and were when said pretended petition was presented to said board of county commissioners, non-residents of said Pratt county, a list of which is hereto attached, marked 'C,' and made a part hereof (list omitted); of the 1,581 names appearing on said pretended petition as aforesaid, 134 of same were signed to said pretended petition under false and fraudulent representations as appears by the 134 affidavits attached together and filed herewith as exhibit 'D,' and hereby made a part hereof (affidavits omitted.) Of the 1,581 names appearing on said pretended petition as aforesaid, 487 of same were not eligible petitioners, as their names do not appear on the last assessment rolls of the several township and city assessors for said Pratt county, a list of which is hereto attached, marked 'E,' and made a part hereof (list omitted.) Of the 1,581 names appearing on said pretended petition as aforesaid, 181 never signed the same or any part of same, but were put on a detached piece of paper, which was afterward attached to said pretended petition, a list of which is hereto attached, marked 'F,' and made a part hereof (list omitted.) Of the list above named 216 of said names are common to two or more of same, leaving not more than 545 of the names on said pretended petition that are or were when the same was presented as aforesaid eligible petitioners, and leaving said pretended petition with not more than 545 eligible petitioners. There are between 1,600 and 1,900 qualified electors whose names appear on the last assessment rolls of the several townships and city assessors for the said county of Pratt.

"Wherefore, plaintiff asks that this honorable court will grant the prayers of said petition filed herein."

On said September 18, the relator filed a motion before the district judge to reinstate the injunction as to the trustees and justices of the peace, which motion was overruled, and the relator excepted. The further hearing of the motion was continued until October 5, 1885, to be heard at Great Bend, and on that day the injunction was wholly vacated and set aside. The relator excepted, and for the purpose of having the orders of the district judge reviewed in this court upon petition in error, the judge fixed the time within which the petition in error should be filed. Within that time the petition in error was filed.

*Gillett & Whitelaw*, for relator.

*J. C. Ellis*, and *Leland J. Webb*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The question for our determination is, whether the temporary injunction granted by the probate judge of Pratt county, on September 7, 1885, enjoining the county commissioners of that county from canvassing the vote polled on October 1, 1885, upon the proposition for the relocation of the county seat of that county, shall be continued in full force until the action can be tried and determined. The order calling the election was made September 1, 1885. The statute requires thirty days' notice of the election. (Comp. Laws of 1879, ch. 26, § 6.) It is claimed that, although notices of the election were posted September 1st, no legal notice of the election could have been given, as there was not sufficient time so to do. It is settled in this state that where any particular number of days, not expressed by *clear days*, is prescribed, the rule in regard to the computation of time is, not to exclude both the day on which the notice is served and the day on which the act is to be performed, but to exclude the one and include the other. (Civil Code, § 722.) Following this rule, thirty days' notice was given. This was sufficient. (*English v. Williamson*, ante, p. 212.)

It is next claimed that no sufficient petition was presented to the board of county commissioners under the provisions of §1, ch. 91, Laws of 1883, which, among other things, provides:

"In all cases where the county seat of any county in this state has been or shall hereafter be located by a vote of the electors of such county, . . . the board of county commissioners, upon the petition of three-fifths of the legal electors of such county, shall order an election for the relocation of the county seat."

The last assessment rolls of the several township and city assessors of Pratt county contain the names of from 1,600 to 1,900 legal electors. The petition presented purported to contain 1,581 names. If the names of the persons who requested the commissioners to withdraw their names from the petition, and the names of the ineligible petitioners, had been stricken off the petition before it was finally acted upon, or if the names of such persons had been disregarded, the petition would not have contained the names of sufficient petitioners; that is, there would not have been upon the petition three-fifths of the legal electors of the county whose names appeared upon the last assessment rolls of that county. If the district judge did not vacate the injunction upon the ground that the probate judge had no authority in this class of cases to issue an injunction, it is probable that he vacated the injunction upon the theory that the county board had no power to strike from the petition the name of anyone who had signed the same, although requested so to do by the signer. The purpose of the petition prescribed by the statute is to enable the county board to determine what the will of the people is in that regard, and whether the number of legal electors required by the statute are, at the time of final action thereon, in favor of calling the election. Of course ineligible petitioners ought not to be counted, and we think the county board, at any time before taking final action upon such petition, upon the request of any person who has signed the same, may determine not to regard such person as a petitioner, and may have his name stricken off the petition; or, if not stricken off, may regard

him as not having signed the same. The legislature intended that no election should be ordered for a relocation of a county seat, in cases like the present, unless a number of the legal electors of the county, equal to three-fifths of the number of legal electors who were assessable and had been assessed at the last assessment, should petition for such an election. If any such elector has, by false representations or through a misapprehension of the facts, been induced to sign such petition, he ought to be permitted to have his name stricken from the petition, if his application therefor is made to the county board prior to final action upon the petition. The commissioners of Pratt county evidently mistook their duty in this respect, and it is only just to them and the people of their county that they have an opportunity to reëxamine the petition and erase therefrom the names of all the signers who made such a request, and to otherwise purge the petition of ineligible petitioners. We do not assent to the view that the finding of the board is so conclusive as to be beyond attack by this proceeding, which was commenced prior to the holding of the election. (*Comm'rs of Leavenworth Co. v. Brewer*, 9 Kas. 318; *Gillett v. Comm'rs of Lyon Co.*, 18 id. 410; *Comm'rs of Wabaunsee Co. v. Muhlenbacker*, 18 id. 129; *Oliphant v. Comm'rs of Atchison Co.*, 18 id. 386; *Welsford v. Weidlein*, 23 id. 601; *Benton v. Nason*, 26 id. 662; *Fox v. Mateo Co.*, 49 Cal. 563.)

1. Removal of county seat; ineligible petitioners; petition to be purged.

We have examined the decisions cited, holding that the determination of the county board in such cases is conclusive until reversed or set aside upon appeal or by writ of error, and also the decision that the county board cannot comply with the request of the signers of petitions or remonstrances asking their names to be stricken off. The former decisions are contrary to the adjudications of this court, and the reasoning of the latter decision is not satisfactory. It is true that county-seat contests are attended with great bitterness, and charges and countercharges of unfair practices and fraud are more or less bandied about; but we cannot perceive that the peace of the community can be promoted by the granting of an election

46 — 34 KAS.

for the relocation of the county seat upon an insufficient petition, or that there will be any increase in the bitterness among the people if the signers of petitions are permitted to have their names stricken off, where their signatures have been procured by fraud, or through a misapprehension of facts.

It is further claimed that the injunction granted September 7th has and can have no operation, because the state can give no bond, and if she could give bond, she would not be suable on it; also, because it is alleged that the probate judge did not fix the amount of the undertaking. To support the first proposition, the case of *Commonwealth v. Franklin Canal Co.*, 21 Pa. St. 117, is cited as decisive. The Pennsylvania statute provides that—

"No injunction shall be issued by any court or judge until the party applying for the same shall have given bond with sufficient sureties."

The statute of this state reads:

"No injunction . . . shall operate until the party obtaining the same shall give an undertaking, executed by one or more sufficient securities."

Under the Pennsylvania statute, the party applying for the injunction must give or *execute* the bond; under the Kansas statute, the party obtaining the jurisdiction may give or *furnish* the bond with one or more sufficient securities, but need not execute it.

3. Injunction; bond, when sufficient.

Even, however, if it be assumed that the Pennsylvania statute regarding injunctions is exactly similar to ours, yet, as in this state all obligations are several as well as joint, we think that where an injunction suit is brought by the state, upon the relation of a proper party, a bond furnished by the plaintiff and executed by sufficient securities would be valid and legal. Upon the other proposition, while the order allowing the injunction does not fix the amount of the undertaking, yet it appears from the face of the undertaking, that the injunction was granted upon the condition that the plaintiff give a bond to the defendants in the sum of

4. Valid bond.

five hundred dollars, to be approved by the clerk of the court. This bond was given and approved on the same day that the order of injunction was allowed. Taking all the record before us, we think it sufficiently appears that the probate judge fixed the amount of the undertaking, and that the bond approved by the clerk of the court was given and accepted in pursuance thereof.

5. Bond; amount fixed.

This is not an action brought under the provisions of art. 7, ch. 36, Comp. Laws of 1879, for contesting county-seat elections, but is a suit brought against county and other officials involving their official action and affecting the public interests. The petition alleges that there was no sufficient petition presented to the county commissioners, and that they acted wholly without any authority in ordering the election for the relocation of the county seat of Pratt county; that they disregarded their duty in not striking off the petition the ineligible petitioners and the names of the electors who applied to have their names stricken therefrom before the election was ordered. The matters set up in the petition are of equitable cognizance, in which a remedy may be by injunction, and the attorney general or the county attorney of the county interested is the proper officer to prosecute this kind of an action. (*Gossard v. Vaught*, 10 Kas. 162; *The State, ex rel., v. Faulkner*, 20 id. 547; *The State, ex rel., v. Comm'rs of Marion Co.*, 21 id. 432; *Benton v. Nason*, supra.)

2. Insufficient petition; injunction; action by county attorney.

Counsel for the county board rely with a great deal of confidence upon the cases of *Moore v. Hoisington*, 31 Ill. 243, and *Dickey v. Reed*, 78 id. 261, to establish the doctrine that the canvass of election returns cannot be interfered with by an injunction. Both of those cases were proceedings for contesting elections. This is not a proceeding to contest an election, but to restrain the canvass of a vote, upon the ground that the petition presented to the county board for the election was wholly insufficient because of the fact that certain names were by the signers requested to be withdrawn, and that some of the names signed were the signatures of non-residents, or

other unauthorized persons.   The petition alleges, in substance, that no election ought to have been ordered upon the petition, and that no election could have been legally held upon the petition, under the provisions of the statute.

As to the constitutionality of ch. 91, Laws of 1883, see *The State v. Comm'rs of Butler Co.*, 31 Kas. 460.   The vote polled October first cannot be canvassed or declared, or any valid proceedings taken thereon to change the county seat of Pratt county, until the real facts of the case shall be ascertained upon the final trial and the temporary injunction now in force shall have been legally dissolved; and the vote can never be canvassed or declared, if it be finally determined that there was no valid or sufficient petition presented to the county board upon which to order an election.   If, upon the trial, it shall be made to appear that after striking from the petition the non-eligible petitioners and the names of all persons who asked their names to be stricken off the petition before final action was taken thereon, the petition contains less than three-fifths of the legal electors of the county on the last assessment rolls of the county, the order for the election and all proceedings thereunder must fall.

We are therefore led to the conclusion that the district judge erred in dissolving the temporary injunction, and the case will be remanded with instructions to reverse such order, and to proceed further in accordance with the views herein expressed.

All the Justices concurring.