## DAVID T. LINEGAR

*v.*

## WOOD RITTENHOUSE.

CONTESTED ELECTIONS—*jurisdiction.* The county courts have no jurisdiction to hear and determine the contest of an election in respect to the office of alderman in a city organized under the general law for the incorporation of "cities, villages and towns." That jurisdiction is conferred by the general incorporation law upon the city council of the city in which the election has been held, under the provision which makes the council the judge of the election and qualification of its own members.

APPEAL from the County Court of Alexander county ; the Hon. REUBEN S. YOCUM, Judge, presiding.

Mr. DAVID T. LINEGAR, *pro se.*

Messrs. MULKEY & LEEK, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

An election was held in the city of Cairo, on the 15th day of April, 1879, for aldermen and other city officers. The parties to this controversy were opposing candidates for alderman in the second ward of the city. When the votes were canvassed, on the 18th day of the month, by the city council, appellant was declared duly elected. The city was, at that time, organized under the general incorporation act governing cities, villages and towns.

Appellee filed a petition in the county court to contest the election, and charged that Linegar did not receive a majority of the legal votes cast in the ward at the election, and that petitioner did receive a majority of the legal votes so cast for alderman in that ward; that there were a number of votes counted for Linegar which were not cast for him, and twenty votes were counted for him which were cast by persons not legally entitled to vote at that election in that ward; and that Linegar had not paid a portion of his taxes when he qualified as an alderman.

Appellant demurred to the petition, on the ground that the county court had no jurisdiction to hear or determine the contest, but that it belonged to the city council, which has the sole jurisdiction of such contests.

The court overruled the demurrer, and defendant thereupon answered. A trial was had, and the court found and decreed that Linegar did not receive the majority of all the legal votes cast at the election, and that petitioner did receive a majority of all legal votes cast in that ward at the election.

Defendant thereupon appealed, and has assigned various errors on the record, the first of which is overruling his demurrer to appellee's petition. And this assignment of error raises the question of whether the county court had jurisdiction of the subject matter of this contest.

In the view we take of the case, this is the only question we deem important to consider. The manner of contesting elections is prescribed alone by statute. The jurisdiction, the mode of trial and the whole contest is purely statutory, and is not regulated or governed by the common law. At the common law it was not a judicial proceeding except in a proceeding in the nature of a *quo warranto*, in which evidence was heard, and the court determined whether the defendant was entitled to the office;—if it was found he was a usurper he was ousted; but it was only by such a proceeding that the courts interfered in such contests. We are therefore to look to the

statute, to ascertain where it has lodged the power to try the contest of an election of an alderman to a city council.

The General Assembly has conferred jurisdiction on the county court in cases of contested elections, after providing for the contest of various officers by other courts, by the 98th section of the Election law. It provides that "the county court shall hear and determine contests of election of all county, township and precinct officers, and all other officers for the contesting of whose election no provision is made."

The city of Cairo is incorporated and acting under the chapter entitled "Cities, Towns and Villages," and must be governed by its provisions. The 34th section of that act provides that "the city council shall be judge of the election and qualification of its own members." Now, what does this language import? Most assuredly that in any contest between persons claiming to be elected an alderman, the council shall be the judge of the contested election, and hear and determine which of the contestants is elected a member of the council. They in no other manner could be the judge of the election of the members of that body. If this be true, then there is another mode provided for the contest of the election of this officer than by the county court, and if so, then by the express terms of the statute it can take no jurisdiction in this case.

The constitution of the United States, and of the various States of the Union, it is believed, have provisions that each house shall be the judge of the election and qualification of its members, and we are aware of no case where it has been held that the courts may determine the election and qualification of the members of either house, where such a constitutional provision exists. On the contrary, it has been the uniform practice for each house of Congress, and of the various States, to hear and decide contested seats. And we can have no doubt that the General Assembly intended to confer on city councils the same power, in cases of contests for seats in the council.

It may be urged that because the legislature has not par-
ticularly specified the manner in which the council shall
proceed, therefore no other provision has been made for
the contest for this office. We think the objection has no
weight. It has made provision, as we have seen, that it shall
be determined by the city council. Suppose the section had
in specific terms provided that such contests should be heard
and determined by the city council, would any one have
doubted that ample provision had been made for such con-
tests? And yet we do not see that in substance and effect
these provisions are not equally broad and. comprehensive.
To our minds there is no doubt that the city council has full
and complete jurisdiction to decide this contest, and the
county. court has no such jurisdiction.

But reference is made to section 57 of the general incor-
poration law of cities, villages and towns (Rev. Stat. 117.)
That section provides that: "The manner of conducting
and voting at elections to be held under this act, and the
contesting of the same, the keeping of poll lists and canvass-
ing the same, shall be the same, as nearly as may be, as in the
case of the election of county officers, under the general
laws of this State." Here we have the manner prescribed
by the general law, section 113 of which provides that the
person desiring to contest shall, within thirty days after the
person is declared elected, file with the clerk of the proper
court, a statement in writing setting forth the points on which
he will contest the election, which statement shall be verified
by affidavit, etc. The 114th section provides that a summons
shall issue to the person whose office shall be contested, or he
shall be notified to appear, and the 115th section requires the
evidence to be taken in the same manner and on like notice
as in cases in chancery, and the case shall be tried in like man-
ner as cases in chancery. These sections point out the mode,
and we can see no great inconvenience, by a few slight changes,
in rendering it entirely practicable for the city council to try
such a contest. The petition can be filed with the city clerk,

the notice can be given to appear before the city council, and depositions taken and returned to the council under these sections, and a trial had by that body. The city council are certainly as well adapted to try such a contest as were these justices of the peace to determine such contests as to county officers under previous laws (see Rev. Stat. 1845, p. 222, sec. 42 *et seq.*) Hence we have a provision that the city council shall determine such cases, and the manner prescribed.

We are referred to the case of *Young* v. *Adam*, 74 Ill. 480, as having a bearing on this case. That was a contest as to which of two persons was elected to the office of alderman in one of the wards of the city of Joliet. The city was organized under a special charter. That case was based on *Brush* v. *Lemma*, 77 Ill. 496. In this latter case it was held that the general law providing for the contest of the election of a county officer, by the 98th section, did not embrace the office of the mayor of a city. That it only embraced officers of the same class or grade. That the office of mayor is not of the same class or grade as those enumerated in the first branch of the section. The 57th section of the general law for the incorporation of cities, villages, etc., was referred to, and it was said that this evidently referred to cities and villages organized under the general law. And it not appearing that the city of Carbondale was acting under the general law, that section had no application. By inference it was held that, had that fact appeared, then the 57th section would have given the county court jurisdiction of the case.

In *Young* v. *Adam*, *supra*, although it related to the office of alderman, the court held, as the city was acting under a special charter, that it was not embraced in the provisions of the 98th section of the election law. It was said that the case was governed by *Brush* v. *Lemma*, and this is true, because the 98th section of the election law does not, as there said, embrace the office of mayor, but the 57th section of the law to incorporate cities and villages does. It was, therefore, by

force of this latter section that the county court acquired jurisdiction in case of a contest for the office of mayor.

It was unnecessary to have referred to the fact that the city of Joliet was acting under a special charter, as the result would have been the same had it been under the general incorporation law. The decision was correct, under the case of *Brush* v. *Lemma,* but not for that reason. The confusion or uncertainty, if any exists, grows out of this immaterial expression in that opinion.

We have seen that at the common law courts have no inherent jurisdiction, except on *quo warranto,* or it may be in *mandamus,* to decide contested elections; hence these enactments are not cumulative, and the courts had no jurisdiction of which to be deprived, but can only exercise such jurisdiction as the statute confers, and in the manner specified. We presume these enactments do not deprive the circuit courts of the power to hear and determine cases of *quo warranto* or *mandamus,* but we apprehend a contest heard and decided by a court under the statute could be pleaded in bar of such a proceeding. The power conferred on the city council to judge of the election and qualification of its own members, however, may not be a bar to a *quo warranto* or *mandamus* proceeding. Dillon on Mun. Corp., sec. 141. But that question is not before us and is not decided. The cases of *State* v. *Fitzgerald,* 44 Mo. 425 and *State* v. *Funck,* 17 Iowa, 365, seem to have been informations in the nature of a *quo warranto,* and, we think, have no controlling influence on this question. Our statute has made provision by which this contest could be tried by the council, and it is, therefore, unlike the Iowa case in that particular.

The county court not having jurisdiction to try the case, the judgment is reversed.

*Judgment reversed.*