JOHN HILLIGOSS

v.

J. E. GRINSLADE ET AL.

</div>

*Municipal Corporations—Village Trustees—Power of President and Trustees to Determine the Election and Qualifications of Members—Chancery Jurisdiction.*

1.  Upon a bill in chancery filed by three village trustees to prevent another from exercising the functions of such office, it is *held:*  That the evidence failed to support the allegations of the bill; and that the bill failed to present grounds for equitable jurisdiction.

2.  Where, by express statutory provision, the president and trustees of a village are vested with the power to judge of the election and qualifications of their own members, the exercise of this power is one of the public duties of the board, and chancery will not interfere therewith where no property rights, strictly considered, are concerned.

<div align="center">[Opinion filed November 23, 1889.]</div>

APPEAL from the Circuit Court of Moultrie County;  the Hon. E. P. VAIL, Judge, presiding.

Messrs. SPITLER & HUDSON and F. M. HARBAUGH, for appellant.

Messrs. MILLS BROTHERS, for appellees.

WALL, J.   This was a bill in chancery by the appellees,

who were three of the trustees of the village of Dalton City, against the appellant, to prevent the latter from exercising the functions of trustee of said village upon the main alleged ground that he was not legally elected.

It was averred that at the special election to fill a vacancy, which was the election in question, held August 28, 1888, one Kennedy received thirty-six votes and the appellant received thirty-seven votes, but that of the votes so received by appellant two were cast by persons not entitled to vote. It was averred that a petition had been presented to the board, composed of the president and trustees of the village, setting forth the said illegal votes and the consequent election of Kennedy, and praying that the board would investigate the matter; [that the board had not yet canvassed the returns or declared the result of the election, and that appellant had pretended to take the oath of office and was claiming the right to exercise the functions of trustee; that the president of the board was illegally recognizing appellant as a trustee, and that appellant acting with the president and two other trustees would constitute a majority, and that there was danger that they would grant license to sell intoxicating liquors within said village, to the irreparable injury of the village and of the inhabitants thereof. A temporary injunction was prayed to restrain appellant from acting as such trustee until the board should canvass the returns. Such injunction was granted. A demurrer to the bill having been overruled the defendant (appellant) filed his answer in which he denied that he had received any illegal votes; denied that before the canvass of the returns a petition was presented to the board; alleged that the board had canvassed the returns and had declared him duly elected; and denied that he and other members of the board were about to or would grant license to sell liquors within the village. The cause having been heard the court made the injunction perpetual.

From a careful examination of the evidence, as contained in the record, we can not find any proof that a petition was presented to the board, as alleged in the bill, or that there was any proof whatever that the persons named in the bill as ille-

gal voters were such in fact. The record is barren of any proof on the latter point. As to the former we find in the verbal evidence an occasional reference to a petition supposed to have been before the board, and we find in the proceedings of the board that a motion was made to "table the petition in regard to the election," but there is nothing to indicate what the petition was for or what it contained—nor does it appear that any action was had on the motion.

We find also that at the same meeting of the board, which was held prior to the filing of the bill, a motion was made by J. E. Grinslade, one of the appellees, to "table the returns of the last special election" (the one in question); that the president overruled the motion and ordered the clerk to swear in the appellant, and that then the appellant came forward and took the oath of office, whereupon on motion the board adjourned. This meeting was held on the 13th of September, 1888, and all the trustees were present, and as appears from the record the meeting was "for the purpose of finishing up the business of the last adjourned meeting and to swear in the newly elected member of the board." We are at a loss to understand how the decree can be sustained upon the evidence. A fair construction of the proceedings of the board would seem to be that they considered the appellant duly elected. It was, perhaps, informal to permit the president to assume the power of overruling the motion, to table the returns and order the member sworn in, but the board evidently acquiesced in what was done by making no protest or objection. This occurred before the filing of the bill, and therefore at that time the board had taken such action as it deemed necessary.

Furthermore, as already stated, it did not appear what the petition was or that illegal votes had been cast for appellant.

It did appear, however, that in October, after the bill was filed, a meeting of the board was held, when resolutions were presented declaring that the votes referred to were illegal, and that Kennedy was therefore elected. At this meeting there seems to have been some confusion and irregularity, and upon the passage of the resolutions the three appellees only

participated. This proceeding occurring after the filing of
the bill and after the September meeting, amounted in sub-
stance, if it had any legal validity, to a reconsideration of the
action of the board in seating the appellant at the September
meeting, and to a declaration that there was illegality in
respect to the two votes mentioned. Without adverting to
the question whether, pending the suit, the board could take
action which would affect the legal rights of the parties, we
are of opinion that the passage of these resolutions, in the
manner stated, does not furnish proof of the fact alleged in
the bill that these votes were illegal. The bill alleged they
were illegal and the answer denied this allegation. It was to
be proved, therefore, by legal and competent evidence. As-
suming, then, that the bill stated such a case as would move
a court of chancery to action, the evidence wholly failed to
support it and therefore the bill should have been dismissed.
But the fundamental point is to be considered, whether the
bill presents sufficient ground for jurisdiction in equity. By
the statute under which the village is organized, the presi-
dent and trustees of the village are vested with the power to
judge of the election and qualifications of their own members.
See paragraphs 35 and 192, Chap. 24, Starr & C. Ill. Stats.
The jurisdiction to determine contests for seats in the board is
thereby given to the board, and is primarily to be exercised
by the board as an independent tribunal. Linegar v. Ritten-
house, 94 Ill. 208.

Whether this power of the board is exclusive, or whether
the courts might, in proper cases, entertain *quo warranto* or
*mandamus* upon questions arising in controversies regarding
the right to a seat in the board, we need not determine or
consider in the present case. It is enough to say the power is
clearly vested in the board, composed of the president and
trustees, and its exercise is one of the public duties of the board
conferred by express provision of the statute, and is a power
generally held and exercised by bodies having legislative func-
tions. The rule is well settled that chancery will not interfere
with the exercise of such duties and powers where no property
rights, strictly considered, are concerned. It will not interfere

in matters of a political nature or in matters involving merely the exercise of governmental or official functions, either in respect to the official himself or the body which recognizes or authorizes his action. Kerr on Injunctions, 1, 2; Sheridan v. Colvan, 78 Ill. 237.

In this instance the bill was not filed against the village trustees, nor did it profess to operate upon them, but the effect was to prevent one of their members from acting in discharge of his official powers, upon the ground that the board had not properly exercised its duty or power in the premises, and this was extended to and did operate upon the board, indirectly, at least, and was efficient to obstruct its free proceedings. It assumed to determine for the board whether it had properly exercised its power to judge of the election and qualification of its own members—an assumption quite inconsistent with the authority cited above, and if sustained, quite certain to embarrass and impede the board in discharging this function. It is in effect to supervise the board in the performance of this public duty.

We are of opinion, therefore, the bill contained no equity upon its face and presented no ground of jurisdiction in chancery. The decree will be reversed and the cause remanded with directions to dismiss the bill.

*Reversed and remanded.*