## THOMAS S. MARSHALL

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS EX REL.

*Officers—Right to Office—*Quo Warranto—*Alderman.*

1. Upon proceedings instituted to determine the right of a person named to hold the office of alderman in a certain municipality, two pleas were interposed thereto, setting forth, among other things, that the municipality in question was invested with the power to judge of the qualifications, election and return of its own members, and with the power to determine all contested elections held under its charter, and that it had in fact determined that defendant was duly elected, this court holds that the trial court erred in sustaining plaintiffs' demurrer to said pleas.

2. A municipal charter empowering its council to judge of the election qualifications and returns of its members, can investigate and then judge of the real facts developed by such investigation as to who is elected, and are not absolutely concluded by the face of the returns.

[Opinion filed September 11, 1891.]

APPEAL from the Circuit Court of Marion County; the Hon. W. H. SNYDER, Judge, presiding.

Mr. HENRY C. GOODNOW, for appellant.

A tie means a legal tie. In other words, an illegal vote can not make a legal tie. An illegal vote is no vote, and is to be eliminated and can not be counted.

The city council had complete jurisdiction and authority to hear and determine the contest under Sec. 6 of Art. 2 of its charter.

In this contest they found that Thomas Cunningham, who voted for relator, was not a legal voter in that ward and his vote was illegal; hence there could be no tie vote, and appellant having received a majority of the legal votes cast, was duly elected and thereupon installed into the office. The returns of the judges of election that appellant and relator received an equal number of votes was not conclusive upon the council. High's Extraordinary Legal Remedies, 465, Sec. 638; People v. Van Slyck, 4 Cow. 297; State v. Stears, 44 Mo. 223; Geneval v. Barstow, 4 Wis. 527; People v. Cook, 8 N. Y. 67; People v. Mayor of New York, 3 John. Cas. 79; People v. Sweeting, 2 John. Rep. 184; Cooley's Constitutional Limitations, Sec. 624, 2d Ed.; People v. Matteson, 17 Ill. 167.

The contest of an election is for the purpose of finding out how many votes were cast for or against a candidate or for or against a measure. County of Lawrence v. Schmaulhausen, 122 Ill. 321; Kingery v. Berry, 94 Ill. 515; Dale v. Irwin, 78 Ill. 170; Talkington v. Turner, 71 Ill. 234.

The contest involved the legality of the vote of Thomas Cunningham. Sec. 61, page 109, Vol. 1, Starr & C. Ill. Stats. provides for the opening of the package of ballots and referring to same by witnesses for the purpose of contest.

The judges of an election have no power to refuse a vote. If the vote is challenged they must require an affidavit and if the proper affidavit is made the vote must be received and counted by the judges. This does not preclude the right of a contestant of an election from showing the illegality of such a vote. The very object of the contest of an election is to show who is elected, and this can only be done by showing the illegal votes.

Mr. T. E. Merritt, for appellees.

In 94 Ill., cited by appellant, page 518, in that case the return of the judges of the election gave Kingery seventy votes and Berry sixty-eight votes. There was no tie there.

In 123 Ill. page 321:

" The certificate of the judges of election with the list of

voters and the tally sheet is the only evidence upon which the canvassing board can act in determining the result of an election."

By reference to Starr & C. Ill. Stats., page 2419, Chap. 139, Sec. 71, you will see:

" In case two or more persons shall have an equal number of votes it shall be decided between such persons by lot under the direction of the town clerk by drawing."

In this case there could be no contest because the statute fixes the manner of proceeding in such cases and so does Sec. 11 of the city charter, one to draw lots and the other to call a new election.

I have examined numerous authorities of our State and they all apply to cases where some person has been declared elected; and I have never found where a person was foolish enough to contest a tie vote, but the case now before you.

Power conferred on city council to judge of the qualifications of its members does not oust the court of its jurisdiction by *quo warranto* to inquire into the eligibility of the incumbent.    People v. Bird, 20 Ill. App. 568.

The charter of the city in Sec. 11 has positively laid down the fundamental law of the city in case of a tie, and the council has no right or discretionary power to do otherwise.

Appellant says that Thomas Cunningham was not a legal voter while the tally list, tickets, poll books and certificate of the judges of the election said he was and declared the result a tie.

Appellant cites Sec. 61, page 109, Vol. 1, Starr & C. Ill. Stats., in regard to opening the ballot.

Those contests are given by the general law of the State. But this case is under a special charter and not the general law.

SAMPLE, J.    The people on the relation of B. A. Snodgrass filed a *quo warranto* petition to determine by what right Thomas S. Marshall held the office of alderman of the second ward of the city of Salem.    In answer to the petition, two pleas were filed.    The first plea set up in substance, that the city of

Salem was acting under a special charter, Vol. 1, Acts 1865, p. 507, which by Sec. 6, Art. 2, invests the city with the power to judge of the qualification, election and returns of its own members and with the power to determine all contested elections held under the charter; that on the 8th day of April, 1890, an election was duly held in said city for alderman of the second ward, at which, as returned by the election officers, the relator and himself each received thirty-four votes; that on the 9th day of April thereafter, the council opened, read and canvassed the returns, which showed the same result; that thereupon he at once notified relator that he would contest the election and *then* and *there* filed his petition with the council for a contest, on the ground that there was not a tie on the legal votes cast, but that on the contrary he had received a majority of such votes, because one Thomas Cunningham who had voted for Snodgrass at said election was not a legal voter in said ward; which petition was answered by relator and on the 14th day of April, 1890, the city council heard the evidence on said contest and on the 17th day of April decided and declared that the vote of said Cunningham was illegal and that the vote at the said election was not a tie vote as returned by the judges of the election, but that the defendant had received a majority of all the legal votes cast, and declared the defendant duly elected as alderman of said ward, whereupon he took the oath of office as required by law and has since held said office under that right. The second plea did not set up the contest before the council but in substance, that the election was regularly held, at which sixty-seven legal votes were cast, of which he received thirty-four, which was a majority of all the legal votes cast; that returns were duly made to the council, which canvassed the returns and declared the defendant duly elected, whereupon he took the oath of office, entered upon his duties, and by that right has continued ever since to perform them. A general demurrer was filed to both pleas and sustained by the court. The defendant elected to stand by his pleas; thereupon judgment of ouster was entered against him, to which he excepted and appealed to this court.

From the tenor of the arguments it appears that the demurrer was sustained on the ground that the returns having shown that the vote was a tie, it became the duty of the council to call another election and that it had no power to hear evidence and determine which one was elected; that the duty of the council was declared by Sec. 11, Art. 2, of said charter, which provides that, " Whenever there shall be a tie vote in any election for alderman, a new election shall be ordered forthwith." This construction ignores Sec. 6 of the charter, which provides that the city council shall judge of the elections and returns of its own members as well as " determine all contested elections under this act." The city council's power, by this section, is not limited to the merely formal act of mathematically determining whether or not the additions of the election officers are correct.

Its power is greater than that of a mere canvassing board. It can look into the election and determine for itself whether or not the returns are expressive of the will of the legal voters; the power to judge of the election of its members implies, necessarily, the power to investigate and determine whether the *prima facie* or apparent facts, as disclosed by the returns, are the real facts. This power, under Sec. 6, is commensurate with that given by the Constitution to the Legislature of this State, to judge of the election of its members, as see Linegar v. Rittenhouse, 94 Ill. 208.

To hold that a tie vote produced by fraud, *ipso facto* forces another election, is to put a premium on fraud. It is not meant by what has been said that the council can · act arbitrarily and without investigation in the absence of the interested parties, judge the returns to be false and declare a result contrary thereto, but that a city council clothed with the power given by Sec. 6 can investigate and then judge of the real facts developed by that investigation as to who is elected, and are not absolutely concluded by the face of the returns. To hold otherwise would be to annul the statute giving the council the power "to judge of the election and returns of its own members." If this power is only limited to a contest to be prosecuted by the defeated party, then

Marshall v. The People.

if such party would not prosecute, the body would be power-less to protect itself from the presence and participation of one, in its proceedings, who might have been elected by the most notorious frauds. Because such a power is liable to abuse, is not a sufficient reason for denying or refusing to allow it to be exercised. All power is liable to be abused.

Had the council determined on this investigation that the votes cast for the relator were all legal, then the result of the election would have been declared a tie vote and a new elec-tion ordered as required by law. But before taking that action, the council determined to investigate the question formally raised before it, and it is immaterial whether the proceed-ing was called a contested election or not. The averments of the first plea show that it was regular; that all interested par-ties had full opportunity to be heard, and as it is believed, the action taken by the council was within the legitimate scope of its express authority. The second plea did not set up the full proceedings, but was sufficiently explicit as an answer to the petition, which was general in its terms. No reason is perceived for sustaining the demurrer to this plea.

The demurrer should have been overruled as to both pleas.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*