## City of Evanston et al. v. James Carroll et al.

1. CONTESTED ELECTIONS—*Of Members of City Councils.*—Under the laws of this State a city council is the judge of the election and qualification of its own members. It has the power to determine its own rules and methods of procedure in contests relating to such elections and its decision when reached is final.

2. SAME—*No Jurisdiction in Chancery.*—A court of chancery has no jurisdiction to hear and determine the contest of the election of an alderman in a city incorporated under the general law.

3. SAME—*Of Aldermen in Courts of Law.*—Courts of law have no inherent jurisdiction except on quo warranto or mandamus to decide the contest of an election in respect to the office of an alderman in a city incorporated under the general law.

**Bill for an Injunction.**—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1900. Order for injunction reversed. Opinion filed December 20, 1900.

**Statement by the Court.**—Appellee Carroll and the other appellees, citizens and tax payers of the city of Evanston, Cook county, Illinois, in their own behalf, as well as in behalf of other citizens of said city, filed their bill in the Superior Court of Cook County, which alleges, in substance, that said city is divided into seven wards, represented in the city council by two aldermen each, in accordance with the act of the legislature of this State for the incorporation of cities and villages; that in accordance with the laws of this State appellee Carroll was elected alderman of the fifth ward in said city at the regular annual election held therein on April 17, 1900, having received a majority, in his favor, of forty votes; that the election returns were duly canvassed, showed that he was so elected, and the report thereof made by a committee appointed for that purpose was adopted by the city council May 1, 1900, and that the city clerk delivered to appellee Carroll a certificate of his said election to the office of alderman of said fifth ward; that said Carroll was duly sworn as such alderman, legally installed in said office, entered upon the performance of the duties

thereof, and so continued up to and including September 11, 1900; that on May 15, 1900, one Knight, without warrant of law, instituted what purported to be legal proceedings, against said Carroll, in the common council of said city, in a pretense of contesting said Carroll's election as such alderman, and that one Arnold joined in such contest; that said city council thereupon appointed a committee consisting of Aldermen Underwood, Curran and Barker to investigate the charges of said Knight; that said committee made two reports, one by said Underwood and Curran and the other by said Barker, copies of which, marked exhibits " D " and " E," respectively, are attached to the bill and made a part thereof; that the report of the majority, exhibit " D," was presented in said council September 11, 1900, at a regular meeting, and on motion was adopted by a vote of eight aldermen voting in favor of the motion and of four against; and as a part of such motion, and by the same vote, said council adopted the following resolution, to wit:

" Be it resolved by the city council of the city of Evanston : That James Carroll has not been legally elected to a seat in this body; that said Carroll is not properly qualified or entitled to hold the position of alderman in the fifth ward of this city; and be it further resolved, that the seat occupied by James Carroll be, and the same is hereby declared vacant, and that said James Carroll be, and he is hereby removed from further connection with this council."

The bill then sets out section 7 of article 3 of the act concerning cities, villages and towns, as follows :

" It (the city council) shall determine its own rules of proceeding, punish its members for disorderly conduct, and with the concurrence of two-thirds of the aldermen elect, may expel a member, but not a second time for the same offense," and claims that a vote of a bare majority of the members elect of said council is not sufficient to justify said council in depriving said Carroll of his seat therein.

The bill further alleges that Carroll protested against said action of the council, disregarded it, and demanded recognition as an alderman of said city, but that the mayor and said council refused and still refuse to recognize him

as an alderman or member of said council, and he is thereby prevented from exercising his duties as such, and the people of said fifth ward are deprived of their legal representation in the council, and said Carroll is kept out of his office; that said city, the mayor thereof and nine of the aldermen (naming them), are illegally and fraudulently attempting to deprive said Carroll of his salary as alderman, and are illegally and fraudulently interfering with his right as such; that the next meeting of the council will take place September 18, 1900, and said mayor and said aldermen who voted in favor of said majority report and said resolution, have threatened that they will not permit said Carroll to participate therein or take any part in the proceedings of that meeting or any subsequent meeting.

The bill prays for an injunction against the city, mayor and said aldermen who voted in favor of said majority report and resolution, restraining them and each of them from interfering with Carroll's voting or taking part in the deliberations of the council, and from receiving his salary or interfering with him in the performance of his duties as such alderman, and on a final hearing that the injunction be made to extend to the end of his term.

The bill is verified in the usual form by Carroll.   On the recommendation of a master in chancery, and without notice, an injunction, based upon the bill and exhibits thereto, was issued according to its prayer, and until the further order of the court, from which order of injunction this appeal is prosecuted, pursuant to the statute.

Said majority report, made a part of the bill, omitting the signatures and formal commencement, is as follows:

"We have carefully read and examined the evidence taken, and have heard arguments of counsel upon the facts and the law of the case.   We find that, of the total number of votes cast, thirteen are, by all parties concerned, admitted to be illegally cast; three, for the reason that the parties, being residents and legal voters of the fifth ward, cast their votes in the wrong precinct.   Eight other votes are called in question by the contestants for various reasons.

"In the view your committee take of this matter, it is

unnecessary to decide upon these questions. Even conceding that twenty-one votes, being the entire number questioned by the contestants, were illegally cast, and all for Mr. Carroll, this would not wipe out the majority obtained by him, and your committee could not, on that basis, recommend that his seat be declared vacant.

"There is, however, enough of irregularity about the votes cast and the mode of electioneering practiced, as sworn to in the hearing before Judge Loomis, to add weight to the other consideration upon which our recommendation is principally based.

"Without recounting in detail the evidence, your committee reports its belief, based thereon, that Mr. Carroll made use of liquor in his canvass for election. We are of opinion that this fact is sufficient, if established, to fully warrant and require the council in declaring void the election of Mr. Carroll to membership in this body.

"That the council has full legal power and authority on this ground to declare the seat of this gentleman vacant, is conceded by counsel for Mr. Carroll. Aside from this concession it is our opinion that the council is not a mere canvassing board whose functions are confined to adding the columns of votes reported by the clerks of election, but that it may inquire whether the apparent result was obtained by wrongful or fraudulent methods, or through the use of practices contrary to our public policy. We believe this power should now be exercised.

"We recommend that the seat of James Carroll be declared vacant; that his election be declared void, and that this council, at its pleasure, call an election to fill the vacancy thus created."

The said minority report, which is also made a part of the bill, commences as follows:

"This is a proceeding instituted by Newell C. Knight, Charles E. Arnold and Thomas Catlow, to contest the election of James Carroll and John C. Schuett for the office of aldermen of the fifth ward of the city of Evanston. The facts upon which the proceeding is based are as follows: Statement of the case."

This report then proceeds to set out the election of Carroll and that he was declared elected by the council and took his seat as alleged in the bill, the filing of notices of contest by Knight, Arnold and Thomas Catlow, each of whom filed petitions with the council on the 15th day of May,

1900, for the purpose of such contest, and sets out copies of such petitions, the one by Knight showing that he is a resident and duly qualified elector of the city of Evanston; that he desired to contest the election of Carroll as alderman, and naming eleven different grounds of contest, which in substance are that illegal votes were cast in the election; that Carroll did not receive a majority of the legal votes; that large quantities of beer were brought into said ward prior to and on the date of said election, for the purpose of influencing the votes thereat, contrary to the ordinances of the city; and because Carroll was not eligible to the office of alderman as provided by the ordinances of said city and the statutes of the State; and the one by Arnold, showing that he was a resident and duly qualified elector of the first precinct in said fifth ward of Evanston; that he desired to contest the election of Carroll, and naming ten different grounds of contest, nine of which are the same in substance as the petition of Knight, omitting, however, the charge that beer was brought into the ward, as claimed in Knight's petition, and the claim that Carroll was not eligible, but that he, Arnold, was an eligible candidate and received sufficient legal votes to elect him as alderman of the said fifth ward.

The minority report then proceeds to state the opinion of Mr. Barker, the committeeman who signed such report, which contains statements as to his conclusions from the evidence heard by the committee, and what were parts of the evidence heard by the committee, arguments based thereon, quotations from ordinances of the city of Evanston, statutes of the State and numerous authorities, from all of which he deduced the conclusion that any action which might be taken by the common council of the city of Evanston with reference to the contest of the election of Carroll would be void, and recommended to said council the passage of the following resolution, to wit:

"Whereas, it doth appear that this council has no jurisdiction of the subject-matter of the petitions heretofore filed by Newell C. Knight, Charles E. Arnold, Thomas Catlow, and each of them, to contest the election of James

Carroll and John C. Schuett, as members of this body; therefore be it

Resolved, that this council give no further consideration thereto." ·

Among other provisions of the ordinances of the city of Evanston set out in the said minority report and made a part of the bill are the following, to wit:

"Par. 561. The election of any alderman may be contested· by any elector of the city of Evanston, and the proceedings shall be in accordance with the general laws of this State regulating the mode of contesting of elections for county officers, so far as the same may be applicable.

"Par. 562. The city council shall be the tribunal before which such contest shall be heard, and their decision shall be final.

"Par. 563. When any person shall desire to contest the right of another to hold the office of alderman, to which such person claims the right, he shall, within sixty days after the election, file with the city clerk statements briefly setting forth the points upon which he will contest the election, which statement shall be verified by affidavit."

JOSEPH E. PADEN, corporation counsel, attorney for appellants; GEORGE N. STONE, of counsel.

ADDISON BLAKELY, attorney for appellees.

MR. JUSTICE WINDES delivered the opinion of the court.

The principal question for consideration in this case is whether the proceeding before the common council of the city of Evanston was a contest of the election of James Carroll as alderman, or to expel him from his seat in such council.

There would be no difficulty in the determination of this question had the action of the council, when the two reports of its committee, the substance of which is set out in the statement preceding this opinion, came before it for action, been confined to the passage of the resolution quoted in the statement, in which it is stated " that James Carroll has not been legally elected to his seat in this body." The difficulty is presented by the fact that the majority report,

which was adopted by the council at the same time it passed the said resolution, finds in effect that the majority of the committee could not, upon the basis of votes illegally cast for Mr. Carroll, recommend that his seat be declared vacant, and the further fact that the report states the belief of the committee to be that Mr. Carroll made use of liquor in his canvass for election, and that this, in the opinion of the majority, was sufficient, if established, to warrant the council in declaring void the election of Mr. Carroll.

The nature of the proceeding, however, must be determined from a consideration of the whole of the two reports, the matter referred to the committee, its proceedings, and the action taken thereon by the council. The majority report, in addition to these matters, states "there is, however, enough of irregularity about the votes cast and the mode of electioneering practiced, as sworn to in the hearing before Judge Loomis, to add weight to the other consideration upon which our recommendation is principally based," and then proceeds with a further statement, which shows that the recommendation that the election of Mr. Carroll be declared void, is based principally upon the fact of the belief that he made use of liquor in his canvass, but that the council might "inquire whether the apparent result (of the election) was obtained by wrongful or fraudulent methods or through the use of policies contrary to our public policy."

As will be seen from the statement preceding this opinion, the matters which were under consideration by the committee were the petitions of three different persons to contest the election of Carroll. The minority report of Mr. Barker states that it is a proceeding to contest the election of Mr. Carroll, and then sets out *in haec verba* the different petitions for such contest, and concludes by recommending the passage of a resolution to the effect that the council had no jurisdiction to contest such election, and that the council should give no further consideration to it.

The council did, however, proceed further with the con-

sideration of such contest, and declared by its resolution that Mr. Carroll "has not been legally elected to his seat in this body." It is true that it appears that the proceeding was somewhat informal, and the action of the council in adopting the majority report may be said to be somewhat inconsistent with its resolution, but we are of opinion, from a consideration of the whole matter, as presented by the bill and exhibits thereto, that the proceeding was one to contest the election of Mr. Carroll to a seat in the common council of Evanston, and that the substance of the result reached by the council is that he was not legally elected.

Par. 34, Sec. 6, Art. 3, Chap. 24 of Hurd's Rev. Stats., being the act with regard to the incorporation of cities and villages, provides that "The city council shall be the judge of the election and qualification of its own members." Pars. 35 and 36 of the same act are as follows:

"Par. 35. It shall determine its own rules of proceeding, and punish its members for disorderly conduct, and with the concurrence of two-thirds of the aldermen elected, may expel a member, but not a second time for the same offense; provided, that any alderman or councilman who shall have been convicted of bribery shall thereby be deemed to have vacated his office."

"Par. 36. A majority of the aldermen elected shall constitute a quorum to do business, but a smaller number may adjourn from time to time, and may compel the attendance of absentees under such penalties as may be prescribed by ordinance."

As will be seen from the ordinances quoted in the statement preceding this opinion, the election of any alderman may be contested by any elector of the city of Evanston, and the proceedings shall be in accordance with the general laws of the State regulating the mode of contesting elections, and "the city council shall be the tribunal before which such contest shall be heard, and their decision, shall be final."

From the above provisions of the statute, it is apparent that the city council of Evanston had jurisdiction of the contest and the power to determine its own rules of proceeding, and that its ordinances have provided the method

of procedure.   The method of procedure thus provided has in this case been followed, and the council has reached a decision which its ordinances say " shall be final."

The statute (Hurd, Chap. 46, Sec. 122) in regard to elections provides that " When the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of legal disqualification on his part, or for other causes, the person receiving the next highest number of votes shall not be declared elected, but the election shall be declared void."

This last provision of the statute clearly recognizes that an election may be contested " for other causes " than that the person whose election is contested did not receive the highest number of legal votes cast.   For anything that appears in the bill, the council may have found that Mr. Carroll was not legally elected for other reasons than that he did not receive the highest number of legal votes, and that his election was declared void because he was not entitled to hold the position of alderman for other reasons than that he made use of liquor in his canvass.   We have not before us the evidence upon which the council based its action, nor could we consider its sufficiency to support the action of the council if it were before us.   A court of chancery has no jurisdiction to hear and determine the contest of the election of an alderman in a city which, as we have seen, is conferred by the law of this State upon the common council of the city in which the election questioned has been held.

The legislature has seen fit to commit the determination of election contests of the kind here in question to the city council, a department of the government political in its nature.   The judiciary, being a separate and distinct department, should carefully refrain from interfering with the action of a political branch of the government, except in the plainest cases of palpable excess or abuse of jurisdiction by the action questioned.   However great, therefore, the wrong may be which Mr. Carroll and other citizens of Evanston claim that they have suffered by reason of the

council's action, we are, in reviewing the action of a court of chancery whose aid has been invoked through a bill for an injunction, without the power to give relief. Nor is it within our province to pass upon the claim of wrong. The remedy, if any, is in a court of law. Dickey v. Reed, 78 Ill. 261-71; Moore v. Hoisington, 31 Ill. 243-6; Linegar v. Rittenhouse, 94 Ill. 208-10; Keating v. Stack, 116 Ill. 191; Foley v. Tyler, 161 Ill. 167-75; Douglas v. Hutchinson, 183 Ill. 323-8; Hilligoss v. Grinslade, 32 Ill. App. 45; Pattison v. The People, 65 Ill. App. 651; State ex rel. Vogel v. Bersch, 32 Chicago Legal News, 301, and cases cited.

In the Moore case, *supra*, the Supreme Court was, for the first time, called upon to consider the question of jurisdiction of a court of chancery to inquire into the validity of an election for justices of the peace held in the town of South Chicago, and ruled that a court of chancery had no such jurisdiction under its general powers, and affirmed a decree sustaining a general demurrer to a bill in chancery, the purpose of which was to contest the election.

In the Dickey case, *supra*, in which an injunction was sought against the common council of the city of Chicago to prevent it from canvassing election returns of an election held to determine whether the city would change its charter, the Moore case is re-affirmed, and the court say : " Elections belong to the political branch of the government, and are beyond the control of the judicial power. It was not designed when the fundamental law of the State was framed, that either part of the government should interfere with or control the other, and it is for the political power of the State, within the limits of the constitution, to provide the manner in which elections shall be held and the manner in which the officers thus elected shall be qualified and their elections contested;" and held that when municipal bodies have been organized by the political power of the State and intrusted with the reviewing of election returns, courts should not interfere therewith, except where empowered so to do by the constitution or legislative enactment; that a court of equity had no inherent power to try contested

elections, and would not exercise the power except it be conferred by express enactment or necessary implication therefrom.

In the Linegar case, *supra*, the court considered the section of the statute giving the city council the right to judge of the election and qualification of its members where a petition was filed in the County Court to contest an aldermanic election in the city of Cairo, and held that the city council was the tribunal to determine the contest, and not the County Court; that a court of law had no inherent jurisdiction except on quo warranto or mandamus to decide contested elections.

In the Keating case, *supra*, which was a chancery proceeding in the Circuit Court to contest the election of alderman in the city of East St. Louis, the suit was dismissed for want of jurisdiction of the subject-matter. The judgment was affirmed upon the authority, among other cases, of the Dickey and Linegar cases, *supra*.

To the same effect in principle is the Douglas case, *supra*, which also quotes with approval the language of the court in the Dickey case, and re-affirms the principle there announced.

We regard these authorities as amply sustaining our view in this case, based upon the proceeding before the council being a contest, and do not, therefore, refer to numerous decisions in other jurisdictions outside of Illinois which sustain the same view, except the very recent case of State ex rel. Vogel, *supra*, decided by the St. Louis Court of Appeals, in which some language of the court seems here peculiarly applicable. The court say: "The legislative department of an incorporated municipality is not a tribunal subordinate to the judiciary, but is, within its legitimate sphere, a co-ordinate branch of government, independent of the courts as to all matters committed to its judgment and discretion by the charter which gave it birth," * * * and held that as to matters thus committed to it, for what reason or however arbitrarily or irregularly it may act, the courts are without jurisdiction to revise its judgment. The court further say: "When a municipal assembly or coun-

cil acts within the sphere of its authority, its discretion is as wide as that possessed by the general assembly of the State, and is as free from judicial interference." (Citing numerous cases of the Missouri Supreme Court which sustain the ruling.)

In view of the conclusion that the proceeding in question was one to contest the election of Mr. Carroll, and that the city council of Evanston had jurisdiction thereof and proceeded regularly therein, it is unnecessary to discuss the various contentions of appellee's counsel, that the council violated different provisions of the State Constitution and had no authority to try Mr. Carroll for the offense of giving away beer prior to election day or for any other misdemeanor.

The contention of appellees' counsel that Knight was not a proper person to contest the election of Carroll, can not be maintained for two reasons: First, because, under the ordinances of the city of Evanston, the election of aldermen may be contested by any elector of that city, and second, because it does not appear from the record that Knight was not an elector of the Fifth ward. It does appear that he was a qualified elector of the city of Evanston, and for all that appears he may have been an elector of the Fifth ward.

The claim of appellees that the action of the city council in hearing and determining the contest of Mr. Carroll's election was void, because he had, on the first day of May, 1900, been found by the council to have been duly and legally elected to the office of alderman, is not tenable. The statute of this State (Hurd, Chap. 46, Pars. 112 and 113) clearly contemplates that a contest shall not be allowed until after the result of the election shall have been declared, and the ordinances of the city of Evanston provide that contests shall be in accordance with the general laws of the State regulating the mode of contesting elections for county officers, so far as the same may be applicable, and that a contest may had within sixty days after the election. The contest here was commenced within that time, to wit, May 15, 1900.

The theory of the bill and the argument of appellees' counsel appear to be that the action of the city council of Evanston was an expulsion of Mr. Carroll from his seat in the council after he had been legally elected and seated, and not a contest of his election, and therefore that in order to expel him, a two-thirds vote of the aldermen elected was necessary to make his expulsion legal. In view of the conclusion we have reached—that the proceeding in question was one of contest, the provision of the statute which allows the council to determine its own rules of proceeding, and that a majority of the aldermen elected shall constitute a quorum to do business, it seems unnecessary to discuss this point. It seems too plain for argument that a majority vote of the aldermen elected was sufficient to determine the contest. In fact, we regard it as practically conceded by appellees' counsel that if the proceeding was a contest of the election of Mr. Carroll, the majority vote was sufficient.

Being of the opinion that the Superior Court was without jurisdiction its order of injunction is reversed.