JOHN C. GORDON, Probate Judge, *v.* THE STATE OF KANSAS *ex rel.* HENRY BODER, JR.

*Error from Doniphan County.*

On May 21, 1867, the time of holding an election for permanently locating the county seat of Doniphan county, the act of March 2, 1863 [L., 1863, p. 46], as amended February 11, 1865 [L., 1865, p. 71], governed. The first section of the law of 1863 provided for the call, and gave the power to hold the election, and in case of no choice at the first, it gave power to the county commissioners to hold a second election. The law of 1865 amended and repealed sec. 1 of the law of 1863.

Where at such first election no choice was made and a second election was called under and pursuant to said law of 1865, to be holden June 4, 1867, *it was held* that the law of February 26, 1867 [L., 1867, p. 75], which became a law of May 27, 1867, as it repealed the law of 1865, and contained no saving clause, it thereby obliterated the repealed law, and operated to put an end to all proceedings commenced under and by virtue thereof and pending at the time of the repeal [Sed'k Stat. L., 129, 130; 35 Maine, 345.] The word "proceeding," used in sec. 1, sub'd 1, of the chapter of February 11, 1859, on "construction of statutes" [Comp. L., 838], which provides that "the repeal of a statute does not * * * affect any * * * proceeding commenced under or by virtue of the statute repealed," *held* to be a technical word which has required a peculiar meaning in law, and must be construed accordingly

[Comp. L., 838, sub. 2, § 1], and *defined* "all the steps or measures adopted in the prosecution or defense of an action [2 Seld., 319], and is confined to judicial matters;" and *held* that the holding of an election for permanently locating a county seat is not a "proceeding" within the meaning of the act of February 11, 1859.

The said second election, at which Wathena was chosen as the county seat, *held* void, and judgment of court below, on a writ of mandamus, ordering the plaintiff in error to remove his office of probate judge from Wathena to Troy, the old county seat, *affirmed*.

The facts of the case are as follows :

Troy, in Doniphan county, had been, since A. D. 1855, the county seat thereof. On April 4, 1867, the county commissioners of the county ordered an election to be held for the permanent location of the county seat, and published notice of the election. The law then in existence regulating the matter, was that of March 2, 1863, as amended by the act of February 11, 1865. The law of 1865 consists of an amendment and repeal of the first and fifth sections of the law of 1863. The first section of this law of 1863 regulates the preliminary steps to ordering, and gives the power to the county commissioners to order and hold the election ; and provides, substantially, that if at such election no certain point in the county shall receive a majority of all the votes cast, the commissioners shall select the two points having received the highest number of votes, and order a new election to be held for the purpose of deciding between such two points. The election, so as aforesaid by the commissioners of Doniphan county ordered, resulted in no choice, and Troy and Wathena were the two points selected by the commissioners as the points having received the highest number of votes, and proceeded to order a second election, to be held June 4, 1867, pursuant to and under said laws of 1863

and 1865. In February (26), 1867, the legislature had passed a law amending and repealing the law of 1865, and prescribing different preliminary steps for holding such elections, which law went into force May 27, 1867, eight days before the time of holding the election ordered under the laws of 1863 and 1865. The election was proceeded with under the regulations of the law under which it was ordered, and Wathena was determined to have received a majority of the whole votes cast, and was pronounced the county seat of the county; and the county officers, among them the probate judge, respondent in the court below, were ordered to remove their offices to Wathena accordingly. The principal question in the case grew out of a consideration of the effect of the law of 1867, upon the proceedings regularly commenced under the laws of 1863 and 1865, and pending and undetermined at the time of the repeal thereof. The question was brought up by an application on the part of the relator, a citizen of Troy, for a writ of mandamus, ordering the said probate judge to remove his office from Wathena to Troy. The court below, holding the election of June 4th illegal, granted the writ. To reverse this decision was the object of this proceeding.

*Clough & Wheat* and *A. H. Horton*, for plaintiff in error.

*Wilson Shannon*, for defendant in error.

*Clough & Wheat* and *Horton* contended :

1. The re-location of a seat of justice in a county, when demanded by the people, is a duty from which a

legislature cannot shrink, and the public is not bound to repair losses and afford indemnity (5 *Iowa*, 13, 14 ; 4 *Blackf.*, 208 ; 11 *Ill.*, 336); and this, notwithstanding a conveyance of land to a county, in consideration of the location of a county seat at a particular place. 13 *Ill.*, 465 *and* 457 ; 11 *id.*, 336, *et sub.; Brightley's Dig. U. S. L.*, 469.

2. In removing the county seat, no private property was taken, within the meaning of the constitutional restriction on legislative action, which declares "that private property shall not be taken for public purposes, without compensation." (*Sedg. Stat. L.*, 519, 520, 521, 522, 523 ; 4 *Black.*, 219.) Compensation for damages sustained is limited to the actual taking of property; all other loss comes under the head of *damnum absque injuria*, or under the head of sacrifices which individuals must bear for the common benefit. *Sedg. on Stat. L.*, 523 ; *Hatch* v. *Vt. Cent. R. R. Co.*, 25 *Vt., p.* 49 ; 21 *Penn.*, 100 ; 14 *Barb.*, 405.

3. Such removal is not in conflict with the provision of the constitution of the United States, which declares that "no state shall pass any law impairing the obligation of contracts." (*Sedg. on Stat. L.*, 618 ; 10 *How.*, 416 ; 11 *Ill.*, 336 ; 5 *Cow.*, 538 ; 13 *Ill.*, 457; 19 *N. Y.*, 16 ; 16 *Cal.*, 258 ; 2 *Black.*, 510.) Purchasers of town property take the risks of holding the advantages afforded to a county seat. *Cases cited in* 11 *Ill.*, 336 ; 4 *Black.*, 208.

4. From the record, it appears that the board of county commissioners of Doniphan county, in ordering and directing the elections in question, acted in accordance with the provisions of the act approved March 2, 1863, and the amendment to the law, approved February 11th, 1865, and that all the acts and proceedings

of the said board under and in pursuance of the amendment of February 11th, 1865, were done, completed, and concluded, prior to the taking effect of the amendment of February 26th, 1867, to wit: before May 27th, 1867, and that all acts, proceedings and doings of said board, and of the voters of said county after May 27th, 1867, concerning the elections, were done and performed under the provisions of the law approved March 2, 1863, and still in force, and the law of the state. (*L.* 1865, 71, 72; *L.* 1863, 46, 47; *L.* 1867, 75, 76, *and authentication of L.* 1867.) The amendments to the law of 1863 are to be construed as portions of that law. 36 *Ills.*, 167; 4 *Minn.*, 546.

5. *a.* As the proceedings under the amendment of February 11th, 1865, were concluded, so far as that provision of law, or rather as that portion of the act of March 2d, 1863, was concerned, the amendment which took effect May 27th, 1867, did not abate or avoid them. (1 *Hill*, 334, 335, 336.) The amendment of February 26th, 1867, did not have any retroactive effect, and the same having been passed to take effect at a future day, is to be understood as speaking from the time it goes into operation, and not from the time of its passage. Until it became operative as a law, the public were not compelled to govern their actions by it. (13 *Mich.*, 318, 325, 327; 1 *Clark (Io.)*, 442; 10 *Mich.*, 125, 135; 10 *O.*, 385 *to* 390; 24 *N. Y.*, 20; 7 *Johns.*, 477; 2 *Seld.*, 463; 11 *Paige*, 400.) *b.* It is a rule of construction, that an act changing the mode of proceeding will not have the effect to cause proceedings had under a repealed law, to fall, when the same were not terminated before repeal. (30 *Penn.*, 156-7; 3 *Whar.*, 105 *to* 107.) *c.* The effect of an amendment of a statute made by enacting that the

statute is amended "so as to read as follows," and then incorporating the changes or additions with so much of the former statute as is retained, is not that the portions of the amended statute, which are merely copied without change, are to be considered repealed, and again re-enacted. The part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and the new or changed portion to have become law only at, and subsequent to the passage of the enactment. (*Ely et al.* v. *Holton*, 15 *N. Y.*, 595.) *d.* Under the above rule of construction, adopted by the very able judges of New York, the law of 1865 has really never been repealed, and is to be considered as having continued the law from its original enactment, and it is only the new or changed portion of the law of 1865, which was inserted in the amendment of 1867, that became a law subsequent to the passage of the amendment.

6. Again, under the provisions of the act concerning the construction of statutes, approved February 11th, 1859, the adoption of the amendment of February 26th, 1867, did not repeal the acts and proceedings commenced under the said law of February 11th, 1865. *Comp. L.*, 837, 838.

The court erred in rendering judgment "that the alternative writ of mandamus be made peremptory." If any judgment could have been given for the plaintiff, a peremptory writ of mandamus should have been granted. *Civ. Pro.*, § 589, *Com. L.*, 227.

*Shannon*, for defendant in error, submitted:

If the town of Troy is the legal county seat of Doniphan county, then the statute requires the probate

judge, and all other county officers, to hold their offices there for the transaction of county business. (*Comp. L.*, 432, § 124.) The writ of mandamus is the appropriate remedy in case any of the county officers refuse to hold their offices at the county seat. *See Comp. L.*, 225, § 580 ; 1 *Kas. R.*, 272 ; 5 *Ohio S.*, 497; *Nash*, 729.

It is admitted in the answer of the respondent in the court below, that prior to the 4th day of April and to the 8th day of June, 1867, the town of Troy was the county seat. It is the county seat · yet, unless legally changed. It is claimed that it has been legally changed to Wathena. This brings up the legality of the elections held on the 21st of May and 4th day of June, 1867, and the action of the county board in relation thereto. These elections were both held, according to the notice given by the county board, under the act of 1863. It is claimed, however, notwithstanding the notice of the county board, that these elections were held under the act of 1863 and the act of 1865. It is not claimed that either of these elections were held under the act of 1867. The first election took place before that act took effect, and no election could take place under the act of 1867 until the county board should procure the sworn statement of the township trustees of the number of legal voters in their townships. It is not claimed that this was done. We have to test the legality of these elections, then, by the acts of 1863 and 1865.

The act of 11th of February, 1867, repeals sec. 1 of the act of 1865 ; and this act of 1867 took effect 27th of May, 1867. So that before the second election was held, all the material parts of these election laws, in relation to the removal and location of county seats, were repealed. So the court below determined, and that con-

sequently nothing could be done, after the repeal of those laws, under them, to consummate or effect the removal or location of the county seat of Doniphan county.

By the repeal of the first section of the act of 1865 (which is the whole act), under which the previous election of the 21st of May had taken place, that act is completely obliterated, as though it never had been passed ; and all acts of officers under it, in any matter that had not been completed, are rendered null and void, for the reason that the other acts required to be done in order to complete the removal of the county seat are not authorized to be done, the repeal of the law having taken away all their power in the matter, as well as the right of the electors to vote at the second election.    As to the effect of the repeal of a statute on all matters commenced but not concluded under it, see Sedgwick Stat. Constr., 129–131, and authorities there referred to.    The repeal of an act authorizing a course of proceeding by a public officer invalidates the proceedings, if unfinished, at whatever stage they have arrived. *Sedg.*, 131, *referring to Williams* v. *Co. Com'rs ; 35 Me.*, 345 ; *Butler* v. *Palmer*, 1 *Hill R.*, 324 ; *Hasting* v. *The People*, 22 *N. Y. R.* (8 *Smith*), 99–103 ; *Calkins* v. *The State*, 14 *Ohio*, 230–3.

It is claimed, however, that the act of the legislature entitled "An act concerning the construction of statutes," changes the rule of construction in this case. (*See Comp. L.*, 827.) The first section of this act, among other things, provides as follows :    "Nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed." The only word used in the statute which could, by any

possibility, apply to the matter under consideration, is the word *proceeding*. The same section provides that technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning. The word *proceeding* has acquired a peculiar and appropriate meaning in law. To ascertain what this meaning is, we must look to the standard law dictionaries and reported cases. (*Morewood* v. *Hollister*, 2 *Seld.*, 319, GARDNER, J.) The court, in that case, say that the term *proceeding*, in its more general sense in law, means all the steps or measures adopted in the prosecution or defense of an action. The definition given by Burrell (*vol.* 2, *p.* 340), is, the steps or measures taken in the course of an action, including all that are taken. The proceedings of a suit embrace all matters that occur in its progress, judicially. In a more narrow sense, the proceedings in a cause or matter as entered on record—the record history of the case. (*See also* 2 *Bouv. L. Dic.*, 386.) Every authority confines the term to judicial proceedings. The action of the county board, and the elections held in regard to the location and removal of the county seat of Doniphan county, have no relation to judicial proceedings. We have only to do with the legal meaning of the word *proceeding*. The authorities referred to by the court below in its conclusions of law, are full, to the point and conclusive, and I will not repeat them here. When the legislature repealed the acts of 1863 and 1865, it is fair to presume that they intended the known legal consequence to follow such repeal; otherwise, they would have put in the repealing act a saving clause.

32

*By the Court,* SAFFORD, J.

A large number of points have been raised and industriously argued by the counsel on either side, in this case, and we may be permitted to say that in fortifying the positions which they have respectively taken, they have exhibited unusual zeal and ability, as well as learning in the law. But, inasmuch as our views upon a single question will dispose of the whole case, as far as we are concerned, we shall not need to avail ourselves of the extended research of counsel, as directed to the solution of any other question than the one referred to.

This question—and to it we shall confine our discussion—is, as to the correctness of the conclusions of law found by the district court on the trial of this cause. Without noting the statement of the case otherwise than by a reference to the conclusions of fact, as found by the court, and as they appear in the record, we proceed to state the conclusions of law, as follows, to wit:

1. That the said first election, held on the said 21st day of May, 1867, and all orders and acts whatsoever of the board of county commissioners of Doniphan county in relation thereto, up to the 27th day of May, 1867, were avoided and made of no effect by the repeal of the first section of the act of February 11th, 1865, under and by virtue of which first section of said act the said election was held, which repeal took effect on the said 27th day of May, 1867.

2. That the said second election, held on the said 4th day of June, 1867, not being founded on a previous subsisting election, and not being held under the provisions of the act of February 26th, 1867, which became

a law by publication on the 27th day of May, 1867, was void and of no effect.

The first election referred to in the first conclusion of law found by the court, was held on the 21st day of May, 1867, and the condition of the statutes of this state, on the subject of elections for county seats, at that time was as follows :

An act providing for the removal of county seats, and the permanent location of the same, was passed by the legislature of 1863, and approved March 2d, of that year.

The first section of said act pointed out the way in which elections for the purpose named should be held, and also the preliminary requisites to the ordering of the same. The remaining sections provided for the canvass of the votes and the proclamation of the result, the removal of the records and other property of the county to the county seat so determined, the rules to be observed in the conduct of elections under the act, who should be deemed qualified to vote at such elections, and what counties should not be included in the act. Thus stood the law until the act of February 11th, 1865, was passed and went into operation. This act amended, in some respects, the first section of the law of 1863, and repealed section five of said law, which provided that the provisions of said act of 1863 should not apply to counties where their county seats had been located by a vote of the people therein. No further legislation was had on this subject until the act of February 26th, 1867, which took effect and became a law May 27th, 1867. The election, then, which was held on the 21st day of May, was under and by virtue of the act of 1865, and the unrepealed portions of the act of 1863. By that election the question

as to what place should be the county seat of Doniphan
county was not determined, and it was resubmitted
under and by virtue of the provisions of the same
acts under which the first election had been held;
and said second election was ordered to be held on the
4th day of June, 1867, eight days after said act of 1867
became and was a law of this state: The act of Feb-
ruary 26th, 1867, amended the first section of the act of
February 11th, 1865, in some respects, and by express
provision repealed that section, and contained no saving
clause.     In regard to the effect of a repealing statute,
it seems that the law is well settled, and that where
the repeal is clear and absolute, the effects are of a
very sweeping character.     (*Sedgwick on Statutory and
Constitutional Law*, 129.)     So, also, to like effect are the
words of TINDAL, C. J., quoted in Sedgwick, 129 : "The
effect of a repealing statute I take to be to obliterate the
statute repealed as completely from the records of
parliament as if it had never passed, and that it must
be considered as a law that never existed, except
for the purpose of those actions or suits which were
commenced, prosecuted and concluded while it was an
existing law."     Upon this principle, the repeal of a
statute puts an end to all prosecutions under the stat-
ute repealed, and to all proceedings growing out of it,
pending at the time of the repeal.     (*Sedg. on Stat. and
Const. Law*, 130 ; 35 *Maine*, 345.)     Such being the
case, the repeal of the first section of the act of Feb-
ruary 11th, 1865, by the act of February 26th, 1867,
operated to put an end to the validity of said first
section, and to put an end to and obliterate all acts
done under and by virtue of said repealed section,
which were pending and not concluded at the time the
repealing statute went into effect, to wit, on the 27th

day of May, 1867 ; and we think that it was the intention of the legislature that this repeal of the first section of the act of 1865 should so operate ; otherwise, they would have incorporated a saving clause into the act of 1867—and their failure to do this furnishes very satisfactory evidence of their intentions.

But it is claimed that the first subdivision of § 1, ch. 188, Comp. L., 1862, has changed the rule of construction to which we have referred. It is there provided "that the repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed."

The term "proceeding," as used in this portion of the statute, is the only one therein contained, which can, by any possibility, be held to apply to the elections involved in this case. Does it so apply—or, in other words, were the acts and doings begun and carried forward to the time of the ordering of the second election as shown by the record, *proceedings* within the meaning of the statute ? We think not. The term "proceeding" is a technical one, and has acquired a peculiar and appropriate meaning in law. In its general sense, in law parlance, it means all the steps or measures adopted in the prosecution or defense of an action. 2 *Seld.*, 319.

The definition given by Burrell is to a similar effect—that it includes the steps or measures taken in the course of an action, including all that are taken.

Bouvier defines the word proceeding, thus : "In its general acceptation, it means the form in which actions are to be brought and defended, the manner of intervening in suits, of conducting them, the mode of de-

ciding them, of opposing judgments and executing them.''

He then goes on to speak of proceedings as ordinary, summary, and special; but it will be observed that he confines the term wholly to matters connected with, and growing out of judicial matters.

There are other authorities going to the same point; but these are perhaps sufficient.

This word being, then, a technical term, as before stated, must be held and construed according to the peculiar and appropriate meaning which it has acquired in law. And this follows, not only from the decisions of the courts, and the authority of standard writers, but it is in accordance with the rule of construction adopted by the legislature of this state. See subdivision 2, §1, chap. 188, Comp. L. 1862, last clause, which reads as follows: ''But technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning.''

We are therefore of the opinion that the first conclusion of law found by the court was correct, and that the correctness of the second conclusion of law necessarily follows.

The judgment of the district court is affirmed.

All the justices concurring.