THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY V. THEODORE A. BRASSFIELD.

1. EMPLOYÉ, *Injured — Negligence of Co-Employé.* A section man employed by a railroad company suffered an injury while unloading ties from a car for the purpose of repairing the company's track. It was claimed that the injury was caused by the negligence and mismanagement of a co-employé. *Held,* In an action against the railroad company, that there is sufficient evidence to sustain the claim of the person injured, and that the employment and work in which they were engaged brings the case within the terms of chapter 93 of the Laws of 1874, making a railroad company liable for the negligence of a co-employé.

2. EXPERT — *Evidence of Injury.* The injury inflicted was rupture and varicocele, and a competent physician and surgeon, who had examined the injury, was called as an expert, and testified that such injuries were generally the result of more or less violence. He had heard the injured plaintiff testify how the injury was caused, and he was asked to state whether, in his opinion, the plaintiff's injury could have been produced in the manner stated. Over objection, he answered that it could, and must have been done by violence. *Held,* Not to be prejudicial error.

3. RECORD ON REVIEW — *Instructions.* The charge of the court is a "proceeding" in a cause, and where there is a statement in a case-made that it contains all of the proceedings in the cause, it will be held that all of the instructions are embodied therein.

4. INSTRUCTION, *Not Misleading.* An instruction given to the jury, that "Direct and positive evidence of negligence as a fact is not required. Any circumstance from which negligence may be reasonably inferred may be sufficient," is *held* not to be misleading or erroneous.

### *Error from Johnson District Court.*

ACTION by *Brassfield* against the *Atchison, Topeka & Santa Fé Railroad Company* to recover for personal injuries sustained while in the employment of defendant. November 12, 1889, there was a judgment for plaintiff, and defendant brings error.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

1. The evidence is insufficient to show negligence in a fellow-servant, and the verdict cannot therefore stand.

Negligence, in a suit brought by the servant against the master, will not be presumed. It must be shown that there was a failure to perform some duty toward the plaintiff. In the case of the *Mo. Pac. Rly. Co. v. Haley,* 25 Kas. 35, the plaintiff was injured by falling from the cars, caused by a sudden concussion or jerk from reversing the engine, by the engineer, to stop the train. It was held that no culpable negligence was shown in that case.

So, in *Jackson v. K. C. L. & S. K. Rld. Co.,* 31 Kas. 761, it was held that as to a servant there was no negligence in reversing an engine while switching, although the plaintiff was stepping upon the same.

See, also, *A. T. & S. F. Rld. Co. v. Wagner,* 33 Kas. 660, and *A. T. & S. F. Rld. Co. v. Ledbetter,* 34 id. 326, in which cases it is laid down that it will be presumed that the defendant has discharged its duty and that the burden is upon the plaintiff to prove negligence. In those cases the rule is also laid down as to what is necessary for the servant to prove in order to recover from the master. See, also, *Sullivan v. Mining Co.,* 21 Fed. Rep. 892; *McCoy v. Street Rly. Co.,* 52 N. W. Rep. 93.

2. There was error in the admission of the evidence of Doctor Holmes, a witness for the plaintiff, who testified as follows:

"Ques. Did you hear Brassfield's statement when on the stand? Ans. I did.

"Q. Now, you may state to the court and the jury whether or not, in your opinion, his present condition could have been produced or brought about in the manner which he detailed to the jury in your hearing. [Counsel for the defendant objects to the question. Objection overruled and exception taken.] A. Yes, sir; it must have been done by violence."

This question was improper. The plaintiff narrated how the injury occurred, and it was not for this physician to draw his conclusion as to whether, from those statements, the injury was caused by violence or not. The plaintiff testified to no violence whatever. It is improper to ask an expert witness his opinion upon a case or upon testimony given. The only proper form is to put the facts to him in a hypothetical question. See *Dexter v. Hall*, 15 Wall. 26.

3. The instructions of the court were vague, indefinite, and misleading. The court instructed the jury as follows:

"5. Direct and positive evidence of negligence as a fact is not required. Any circumstances from which negligence may be reasonably inferred may be sufficient."

This was misleading, and improper to be given to the jury. In the first place, it was the duty and province of the court to determine from what facts and circumstances negligence might be inferred, and it was then, and then only, after that, the province of the jury to determine whether, from those facts and circumstances, negligence ought to be inferred. See *Randall v. B. & O. Rld. Co.*, 109 U.S. 192; *Perigo v. C. R. I. & P. Rld. Co.*, 55 Iowa, 326, 352; *Wheeland v. C. M. & St. P. Rld. Co.*, 52 N.W. Rep. 119.

The court also instructed the jury as follows:

"By a preponderence of the evidence is not necessarily meant the greatest number of witnesses testifying upon any question, but the evidence to which you gentlemen give the greatest credit."

This instruction was intended to be directed against the defendant. The plaintiff was outnumbered in the number of witnesses, and had also against his testimony his own letter and statement. This instruction was misleading and prejudicial. It gave the jury an opportunity to consider simply the testimony of an interested witness and give it more weight than that of a number of disinterested witnesses. See Sackett, Inst. Jur., 2d ed., pp. 42, 43; *L. M. Rld. Co. v. Wetmore*, 19 Ohio St. 110; 11 Am. & Eng. Encyc. of Law, p. 249.

*A. Smith Devenney,* for defendant in error:

We take it that Brassfield, the injured employé, is within the purview of the act of March 4, 1874. Laws of 1874, ch. 93; *U. P. Rly. Co. v. Harris,* 33 Kas. 416; 137 U. S. 508; 47 N. W. Rep. 1068; 87 Ga. 323; 30 Fed. Rep. 925; 20 Nev. 222, 292; 77 Iowa, 405; 14 S. E. Rep. 185.

The jury found that the injuries arose from Hackley's negligence, and not from accident or design. There was some evidence to support such conclusion. See 77 Iowa, 406; 87 Ga. 323; 14 S. E. Rep. 185. The jury are at liberty to infer negligence from the circumstances. 58 Mich. 458; 92 N. Y. 628; 104 Mass. 137; 108 Ill. 113; 33 N. J. Law, 434.

All the instructions are not contained in the record; those asked by the company, as well as the general charge of the court, are wholly omitted. This court has declared, that "where the record fails to show that all the instructions are contained therein, the reviewing court cannot consider alleged errors in refusing to give instructions asked," etc. *Winston v. Burnell,* 44 Kas. 367; *Clannin's Case,* 24 N. E. Rep. 1044.

The instructions appearing in the record fairly put the law of the case to the jury. 2 Thomp. Trials, § 2314; *Benefit Association v. Swenson,* 49 Kas. 449. An instruction to the effect that the preponderance of evidence may not depend entirely upon the number of witnesses testifying on either side of the case, is proper. *Railroad Co. v. Fisher,* 31 N. E. Rep. 407.

Brassfield testified that his co-employé (at the other end of the unusually large tie) gave the tie a jerk or twist, and then a push against his bowels, in a negligent and careless manner, which caused the double hernia, etc. That co-employé testified that he had no recollection of his doing so; in fact, he contradicts B. in several particulars. Doctor Holmes testified that the injuries could not have proceeded from the mere lifting of those heavy ties, but that some one must have pushed the tie against B.'s bowels. This is one form of violence. No person was present at the time the injuries were inflicted.

The testimony of the company's witnesses covered two points only, namely, (1) that B. never told any of his co-laborers the precise cause or particulars of his injuries; and (2) that B. worked for two or three days after he received the injuries upon the section, although "grunting" all the time. His family physician, Ferguson, testified that B. gave no evidences of having been ruptured or the like prior to the time of his receiving the injuries complained of in this action. This is substantially all the evidence in the case. Doctor Holmes testified that B., since receiving those injuries, was not the half of a man — his capacity to labor, to do the character of work he was accustomed to, was impaired at least one-half. From the foregoing, it will be observed that there was and is a conflict in the evidence as between B. and the co-employé whose negligence is complained of, and not between B. and some or any other of his co-employés; so that, we take it, the question is, had the jury the right to believe B. and disbelieve said co-employé? If so, then that ends this controversy, as there is no error to be found in the special findings of the jury; they are in harmony with each other and the general verdict, and there is some evidence, not a bare *scintilla,* in the record to support the two and only two principal questions propounded by B. Therefore, it seems to us, that the real question before this court, as presented by the railroad company, is one relating to the weight of the evidence or degree of proof, not that there is an entire absence of testimony to sustain the verdict. Such being the case, the company has no standing here. See *Rapid Transit Rly. Co. v. Fox*, 41 Kas. 715.

Hence, we take it, the verdict and findings are not contrary to or against the evidence, even if the reviewing court shall invade the domain of the jury, as it is requested by the railroad company. This court has repeatedly declared that "the jury are the triers of fact, and it is not the duty of this court to substitute its judgment for that of the jury, upon purely a question of fact upon which the evidence is conflicting, no

matter which way the evidence preponderates," etc. *Johnson v. Leggett*, 28 Kas. 591; *McAboy v. Talbot*, 37 id. 19.

See, also, *Atyeo v. Kelsey*, 13 Kas. 212; *Ashton v. Ingle*, 20 id. 675; *Brown v. A. T. & S. F. Rld. Co.*, 31 id. 14; *U. P. Rly. Co. v. Diehl*, 33 id. 426; *Langan v. City of Atchison*, 35 id. 327; *Martin v. Hopkins*, 40 id. 64, 65; *A. T. & S. F. Rld. Co. v. Gibson*, 42 id. 37; *Mo. Pac. Rly. Co. v. Cassity*, 44 id. 207; *Marcott v. Railroad Co.*, 47 Mich. 1; *Bradley v. Railroad Co.*, 45 N. Y. 422; *Scott Case*, 13 S. W. Rep. 419.

The opinion of the court was delivered by

JOHNSTON, J.: Theodore A. Brassfield, who was employed by the Atchison, Topeka & Santa Fé Railroad Company in the capacity of a section hand, was injured while unloading ties from a car, which were about to be used in the repair of the company's track. The injury is alleged to have occurred through the negligence of a co-employé who was assisting in unloading the ties. It is stated that Brassfield had taken hold of one end of the tie, and the co-employé carelessly took hold of the other end and jerked and turned it over so as to throw Brassfield off his balance, causing a heavy strain on him, which produced inguinal and femoral hernia, and also varicocele. It is averred that the injury is of a permanent character, and was produced without fault or negligence of Brassfield. He laid his damages at $5,000, and upon a trial the jury awarded him $700. The errors assigned relate to the admission and sufficiency of the evidence upon which the verdict rests, and also to the instructions. given to the jury.

The employment in which Brassfield was engaged was such as would entitle him to recover for any injuries sustained in consequence of the negligence or mismanagement of a co-employé. (*U. P. Rly. Co. v. Harris*, 33 Kas. 416.) It is claimed that the plaintiff below failed to show negligence or mismanagement on the part of the company or the co-employé, Hackley, who assisted him in handling the tie; but we think there is evidence upon this point which tends to support the verdict.

The ties were water-soaked and weighed 300 pounds or more. There is testimony to the effect that Hackley first took hold of one end of the tie, and just as Brassfield took hold of the other end, and before he had straightened up and obtained a good hold, Hackley carelessly turned the tie and pulled it, so as to strike Brassfield's body and cause the injury complained of. Although there was contradictory testimony, the jury specially found, upon the whole evidence, that the injury was the result of Hackley's negligence, and, as their finding and verdict have been approved, the controversy, so far as the sufficiency of the evidence is concerned, is closed.

Objection is made to testimony given by Doctor Holmes, a physician and surgeon of extended practice in the treatment of ruptures or hernia, and who had made an examination of Brassfield's case. He described the nature of the injury, and stated that such injuries may be produced without great violence or a great shock, but that he had never seen a rupture of that character except as the result of more or less violence. He was asked if he had heard Brassfield's testimony stating how the injury was inflicted, and, after an affirmative reply, he was further asked to state whether, in his opinion, Brassfield's condition could have been produced or brought about in the manner which he had detailed to the jury. Over the objection of the company, he answered that it must have been done by violence. There is nothing substantial in this objection. The witness had shown himself to be fully qualified to testify as an expert in such cases, and to state what force or violence would produce such an injury as was suffered by Brassfield. It would have been more regular to have put the facts to him in a hypothetical form, and obtained his opinion upon them, instead of asking him for his opinion upon the facts testified to by Brassfield. The testimony of the latter on this question, however, was not obscure or involved, and, being very brief, the company can have suffered no prejudice from this irregularity.

Complaint is made of the instructions in the case; but the defendant in error insists that this question cannot be exam-

ined, as it does not affirmatively appear from the record that it contains all the instructions which were given. There is no statement in the record which in terms states that it contains all the instructions of the court, but there is a statement at the end of the case-made that "the above and foregoing is all the proceedings had in said cause." The term "proceedings," "in its general sense in law parlance, means all the steps or measures adopted in the prosecution or defense of an action." ( *Gordon v. The State*, 4 Kas. 501; 19 Am. & Eng. Encyc. of Law, 220.) In a judicial sense, it fairly includes the instructions given to the jury, and hence it must be held that all of the instructions are contained in the record.

In one of the instructions, it is charged that "Direct and positive evidence of negligence as a fact is not required. Any circumstance from which negligence may be reasonably inferred may be sufficient." It is contended that the instruction is misleading and erroneous, but we fail to see any serious objection against it. A charge of negligence, like any other fact, may be established by circumstances as well as by positive testimony. The jury were not permitted to infer negligence from any circumstance related in evidence, but were in effect limited to such circumstances only as justified a reasonable inference of negligence. The instruction might have been elaborated with profit, but no fuller statement of the law upon the subject was requested, and we cannot say that the court committed any error in giving the instruction quoted.

Some other objections are suggested against the charge of the court, but we find nothing substantial in them, nor do we see any reason why the verdict should be disturbed.

All the Justices concurring.