## HOPEWELL v. STATE.

[No. 2,776.　Filed June 9, 1899.]

JUDICIAL NOTICE.—*Cities.*—*Incorporation.*—The Appellate Court will take judicial notice of the incorporation of cities in this State. *p. 490.*

OFFICERS.—*Public Officer.*—*Police.*—A police officer of a city in the performance of his duties as a peace officer is not acting as an agent or servant of the municipality, but acts in the capacity of a public officer appointed by the city upon the authority of the legislature. *p. 492.*

CRIMINAL LAW.—*Common Law Offenses.*—Since the enactment of the code of 1852, section 237 Burns 1894, providing that "crimes and misdemeanors shall be defined, and punishment therefor fixed by statutes of this State, and not otherwise," there are no common law offenses in this State; but where a statute enacted subsequently to the foregoing section creates a crime by name, without defining it, a prosecution may be maintained, and the courts will define the crime by the aid of common law definitions. *p. 492.*

OFFICERS.—*Police.*—*Failure to Perform Duty.*—*Indictment.*—*Criminal Law.*—An indictment charging that defendant, while acting as a policeman in an incorporated city, did then and there unlawfully and unnecessarily delay, and neglect to disperse and arrest a riotous mob, does not charge an offense within the meaning of section 2105 Burns 1894, which provides that any officer under the Constitution or laws of this State, who fails to perform any duty in the manner and within the time provided by law, shall, upon conviction, be fined and imprisoned. *pp. 492-494.*

CRIMINAL LAW.—*Arrest of Judgment.*—A motion in arrest of judgment must be sustained, where a cause was tried and the punishment assessed under a section of the statute which is not applicable. *p. 494.*

SAME.—*Arrest.*—*Failure of Police Officer to Perform Duty.*—*Indictment.*—An indictment charging that defendant while acting as a policeman in an incorporated city failed to arrest and disperse a riotous mob cannot be sustained, under section 2127 Burns 1894, providing that a county clerk, sheriff, coroner, constable, or other ministerial officer who refuses or neglects to perform any duty he is required by law to perform in any criminal case or proceeding shall be punished by fine or imprisonment. *pp. 494-496.*

From the Jackson Circuit Court. *Reversed.*

*John M. Lewis, Jr.,* and *Oscar H. Montgomery,* for appellant.

*W. A. Ketcham,* Attorney-General, *Merrill Moores* and *Alfred E. Dickey,* for State.

ROBINSON, J.—The indictment upon which appellant was convicted reads as follows: "The grand jurors of the county of Jackson, and State of Indiana, upon their oath present that John Hopewell on the 19th day of October, 1897, at said county, was then and there a policeman in the city of Seymour, and, while acting as such ministerial officer, he did then and there unlawfully and unnecessarily delay, and neglect to disperse and arrest a riotous mob, composed of persons whose names are unknown to said grand jurors, assembled for the purpose of unlawfully touching, beating, and striking Alexander A. Davidson in a rude, insolent, and angry manner, it then and there being the duty of said John Hopewell to disperse and arrest said mob, contrary to the form of the statutes· in such cases made and provided, and against the peace and dignity of the State of Indiana." Errors have been assigned which question the sufficiency of the facts stated in the indictment to constitute a public offense.

The courts of this State take judicial notice of the fact that, at the time mentioned in the indictment, the city of Seymour was a municipality incorporated under the general laws of this State for the incorporation of cities, as the "city of Seymour." This is a part of the history of the State of which courts take judicial notice. *Stultz* v. *State, ex rel.,* 65 Ind. 492; *State, ex rel.,* v. *Gramelspacher,* 126 Ind. 398; *Pennsylvania Co.* v. *Horton,* 132 Ind. 189. The general law for the incorporation of cities gives cities incorporated thereunder power "to preserve the peace· and regulate the police of the city." Section 3541 Burns 1894, section 3106 Horner 1897.

It is alleged in the indictment that appellant was a policeman in the city of Seymour, and was acting as such officer at

Hopewell *v.* State.

the time named. It will be presumed that a policeman of the city of Seymour possessed the ordinary powers of peace officers at common law. *Doering* v. *State,* 49 Ind. 56, 19 Am. Rep. 669.

It is said in *Doering* v. *State, supra,* that this presumption should not be carried beyond the powers possessed by conservators of the peace at common law. It seems that the power of conservators of the peace was not greater than that of constables at common law. 2 Hawkins' P. C. pp. 45, 129. The acceptance of every office implies the tacit agreement on the part of the incumbent that he will diligently and faithfully execute the duties of the office. And at common law where an officer neglected a duty incumbent upon him, either by common law or statute, he was indictable for the offense, and this was so whether he was an officer of the common law, or appointed by act of the legislature. 1 Hawkins' P. C. ch. 66, section 1; 5 Bacons' Abr. 210; 4 Blackstone Com. 140. If a public officer wilfully and grossly neglects the duties of his office, he is liable to an indictment. *Rex* v. *Holland,* 5 T. R. 607. An indictment would lie at common law against all subordinate officers, for neglect as well as misconduct, in the discharge of their official duties. A constable was indictable for neglecting the duties required of him by common law or by statute; and when a statute required him to do what, without requiring, had been his duty, it was held not imposing a new duty, and he was indictable at common law for the neglect. *Regina* v. *Wyat,* 1 Salk. 380; 2 Cro. Eliz. 654; 1 Russell on Crimes 138.

In a case reported in 6 Mod. Rep. 96, it is said: "If a man be made an officer by act of parliament, and misbehaves himself in his office, he is indictable for it at common law, and any public officer is indictable for misbehaviour in his office." The duty to make arrests in certain cases was also imposed upon private persons at the common law, and for failure in this regard an indictment would lie. Thus it is said in an old book: "All persons whatsoever, who are present when a fel-

ony is committed or a dangerous wound given (which, if the wounded person dies, will amount to a felony), are obliged to apprehend the offender; otherwise they are liable to be fined and imprisoned for the neglect, unless they were under age at that time." Law of Arrests, 200; 1 Chitty Crim. Law. 16.

It is true, the indictment shows that appellant was at the time in question a police officer of the city of Seymour. But had he performed the duty he is charged with having neglected, he would not have been acting as the agent or servant of the municipality, but as a public officer appointed by the city upon the authority of the legislature. As a peace officer he is a public officer within the meaning of the statutes of this State. See *City of Lafayette* v. *Timberlake*, 88 Ind. 330.

Since the enactment of the code of 1852 there are no longer any common law offenses in this State. By that enactment it was provided that, "Crimes and misdemeanors shall be defined, and punishment therefor fixed by statutes of this State, and not otherwise." Section 237 Burns 1894, section 237 Horner 1897. It has been held, however, that where a statute enacted subsequently to the above section creates a crime by name, without defining it, a prosecution may be maintained. In such cases the court will define the crime by the aid of common law definitions. *State* v. *Berdetta*, 73 Ind. 185, 38 Am. Rep. 117; *Heddrich* v. *State*, 101 Ind. 564; *Ledgerwood* v. *State*, 134 Ind. 81. Under these authorities the legislature need not define the crime, but it is enough if it designate the thing itself as a crime.

It is provided by section 1771 Burns 1894, section 1702 Horner 1897, that, "All judicial officers, sheriffs, deputy sheriffs, coroners, constables, marshals, deputy marshals, police officers, watchmen, and the conductors of all trains carrying passengers or freight within this State, while on duty on their respective trains, may arrest and detain any person found violating any law of this State, until a legal warrant

can be obtained." But it can not be said that this provision gives any one who was a peace officer at common law a discretion as to when he shall make an arrest. This section evidently intended to give, by statute, a right, which, as to some of the officers named, already existed at common law. It was the duty of peace officers at common law to arrest without warrant persons whom they saw violating the law, whether the offense was a felony or a misdemeanor. The fact that this section gives a *right* to certain peace officers who were such at common law, and also to certain other officers who were not peace officers at common law, does not in any way interfere with the *duty* which the common law imposed upon peace officers, and which still rests upon them.

It is as much the duty of a peace officer to prevent a crime as it is his duty to cause the offender to be apprehended and punished after the crime has been committed. And when he witnesses a breach of the peace, it is his duty to put an end to the breach, and not only that, but as a means of restraining the offender, it is his duty to make an arrest, and detain the offending party in custody. It is nowhere said in this, or any other statute, that no arrest shall be made without a warrant. The felon who is seen to commit a crime should not be permitted to escape. The safety of society requires that he be at once arrested and held. It will not do to say that a peace officer, by virtue of the above section is allowed to decide for himself whether he will make an arrest upon view without a warrant. This statute does not make him the sole judge of the expediency of making an arrest under such circumstances. It was his duty to make such arrests before the statute was enacted, and it can not be said that this statute has in any way curtailed that duty. See *Wiltsie* v. *Holt*, 95 Ind. 469; Smith, Sheriffs, etc., 38.

It is provided by section 2105 Burns 1894, section 2018 Horner 1897, that any officer under the Constitution or laws of this State, who fails to perform any duty in the manner,

and within the time provided by law, shall, upon conviction, be fined and imprisoned. It is true the section heading of the above statute is extortion, but it is quite clear that it provides punishment for an offense that does not come within any definition of extortion. A policeman is an officer under the laws of this State, and it is his duty as a peace officer to arrest an offender whom he sees violating the law. However, it is clear from what has been said, that the indictment does not charge an offense within the meaning of this statute. But the motion in arrest of judgment must be sustained, because the case was tried and the punishment assessed under a section of the statute which is not applicable.

It is argued by the State that the indictment is based upon section 2127 Burns 1894, section 2040 Horner 1897, which reads as follows: "A county clerk, sheriff, coroner, constable, or other ministerial officer who refuses or neglects to perform any duty he is required by law to perform in any criminal case or proceeding; and every officer whose duty it is to execute the same who unnecessarily delays to serve any warrant legally issued in any criminal case, which is delivered to him to execute, when it is in his power to serve the same, either alone or by calling assistance,—shall be fined not more than five hundred dollars nor less than ten dollars, to which may be added imprisonment in the county jail not more than six months, nor less than ten days." If the indictment can be held good under this section, it is because it charges appellant with failing to do his duty in a criminal proceeding. There is no charge of any neglect of duty in any criminal case within the legal meaning of that term. The terms "criminal case" and "criminal proceeding" are not equivalent, yet the latter, in its legal sense, presupposes the existence of the former. We understand the expression "criminal proceeding" to mean any step taken in the progress of a criminal action. The expression, as used in the above statute, evidently has reference to the doing of something in connection with the courts. To say that it includes criminal

conduct on the part of a citizen against whom no charge has been legally preferred is carrying the meaning of the term further than the law authorizes.

Under a section of the New York code, which authorized the court, at any time, in furtherance of justice to amend any pleading or proceeding by correcting a mistake in any respect, it was held that the term "proceeding" is generally applicable to any step taken by a party in the progress of an action, and that "anything done from the commencement to its termination is a proceeding." *Wilson* v. *Allen,* 3 How. Prac. 369.

In *Rich* v. *Husson,* 1 Duer 617, it is said: "The word 'proceeding', both in its popular use and in its technical application, has a definite meaning, which we cannot alter or enlarge. It means, in all cases, the performance of an act, and is wholly distinct from any consideration of an abstract right. A proceeding in a civil action is an act necessary to be done in order to attain a given end. It is a prescribed mode of action for carrying into effect a legal right, and so far from involving any consideration or determination of the right, presupposes its existence, the proceeding follows the right." *Fargo* v. *Helmer,* 43 Hun 17.

In *Morewood* v. *Hollister,* 6 N. Y. 309, it is said: "The term 'proceedings', in its more general sense in law, means all steps, or measures, adopted in the prosecution or defense of an action."

In *Gordon* v. *State, ex rel.,* 4 Kan. 489, the court said: "The term 'proceeding' is a technical one, and has acquired a peculiar and appropriate meaning in law. In its general sense, in law parlance, it means all the steps or measures adopted in the prosecution or defense of an action." See, also, *Dodd* v. *Middleton,* 63 Ga. 635; Anderson's Law Dict.

In the above cases it will be seen that the term "proceedings" is used with reference to something done or to be done in a court of justice. Not only do we believe this to

be the proper interpretation and meaning of the term, but from the wording of the statute itself we can but conclude that it was intended by the legislature to be given this meaning. The case of *People* v. *Bell*, 8 N. Y. Supp. 748, and *People* v. *Roosevelt*, 44 N. Y. Supp. 1003, cited by counsel for the State, have no bearing on the question, as both these cases arise out of the action of the police commissioners in removing from office certain policemen for neglect of duty. The motion in arrest of judgment should have been sustained. Judgment reversed.