## LOEB v. LOEB *et al.*

152.    Opinion Filed July 13, 1909.)

(103 Pac. 570.)

1.  **COURTS—Countl Court—Jurisdiction—Title to Land.** The title to land is not in dispute or drawn in question in an action by a grantee brought solely for the purpose of recovering money paid for taxes against which his grantor had covenanted in his deed, and a probate court of the territory of Oklahoma and a county court of the state for a proper amount has jurisdiction thereof.

2.  **SET-OFF AND COUNTERCLAIM—Existence Between All Parties—Necessity.** Either party may plead and prove a set-off or counterclaim of a proper nature, in defense of the liability sought to be enforced by the other party, and it is not necessary that the same shall exist as between all parties plaintiff and defendant in such suit, but any party may enforce his set-off or counterclaim against the liability sought to be enforced against him.

1.  **COURTS—County Court—Jurisdiction—Title to Land.** The title In October, 1907, a civil action was begun in a probate court for a sum within the jurisdiction of a justice of the peace. While it was pending, and before trial, statehood intervened, and the case was tried in the county court in November, 1907. At the conclusion of the evidence plaintiff requested the court to give to the jury special and general instructions, which request was refused. **Held,** not error.

4.　**APPEAL AND ERROR—Review—Questions of Fact.** Where the verdict returned by a jury is reasonably supported by the evidence, a judgment rendered thereon will not be reversed on appeal.

(Syllabus by the Court.)

*Error from Noble County Court; H. E. St. Clair, Judge.*

Action by Henrietta Loeb against Leopold Loeb and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*H. A. Johnson,* for plaintiff in error.
*Doyle & Cress,* for defendants in error.

DUNN, J.　This action was commenced in the probate court of Noble county on the 14th day of October, 1907, plaintiff filing her bill of particulars to recover from defendants $39.42, for and on account of certain taxes which she was required to pay upon land purchased by her from the defendants and against which they had covenanted in their deed.　To this bill of particulars defendants filed a demurrer, which was overruled.　An answer was then filed setting up that the court was without jurisdiction, for the reason that the action was one in which the title to real estate was in dispute, and also denying that at the institution of the suit, or at any other time, defendants were the owners of land described in plaintiff's bill of particulars, and denying the execution and delivery of the deed.　For a cross-bill against plaintiff they averred that she was indebted to them in the sum of $100 for commission on account of services rendered in effecting the sale or exchange of the land described in the warranty deed upon the covenants of which plaintiff predicated her action.　After the answer and cross-bill were filed, and before the trial, statehood intervened, and the cause was tried to a jury in the county court of Noble county in November, 1907.　Verdict was rendered against plaintiff and in favor of defendants Leopold Loeb and William A. Watkins on the cross-bill in the sum of $5.　Motion for new trial was filed and overruled, and the cause has been brought to this court by petition in error and case-made.

Section 396, art. 15, c. 22, par. 1872, subd. 5, Wilson's Rev. & Ann. St. 1903, provides that the probate court shall not have jurisdiction in any matter wherein the title of land or boundaries may be in dispute. Section 12, art. 7, p. 219, Snyder's Ann. Const. Okla., provides that the county court shall not have jurisdiction in any action wherein the title or boundaries of land may be in dispute or called in question. It is insisted by counsel for the defendants that the court was without jurisdiction to enter- tain the action for and on account of these provisions. We do not agree with them. This was not an action for the purpose of determining the right of either of these parties in or to this land. It was simply a question of whether or not a covenant in the deed had been broken. Neither party sought to establish title. Plaintiff sought to establish merely the facts that the de- fendants had executed to her a certain instrument, a deed, and that the covenant therein contained against incumbrances or taxes was broken at the time it was made. An inquiry into the state of the title for no other purpose or end than to ascertain this fact does not involve the title or draw it into question. *Hesser v. Johnson*, 57 Neb. 155, 77 N. W. 406; *Dafoe v. Keplinger et al.*, 1 Neb. (Unof.) 440, 95 N. W. 674; *Campbell v. McClure*, 45 Neb. 608, 63 N. W. 920; *Flannery v. Hinkson*, 40 Vt. 485. We are aware that there is some contrariety of opinion on this proposition; but in our judgment the rule declared in the foregoing authorities is the correct one.

It is claimed by counsel for plaintiff that the counterclaim or set-off which was pleaded in the cross-bill was not available by reason of the fact that it did not affect all the parties, and attention is called to the cases, *Murphy et al. v. Colton et al.*, 4 Okla. 181, 44 Pac. 208, and *Richardson et al. v. Penny*, 10 Okla. 32, 61 Pac. 584, as well as a number of authorities from other states. Counsel for both parties evidently overlooked the statute passed by the territorial Legislature in 1905, found in section 3, art. 7, c. 28, p. 328, of the Laws of that year, in which it is provided that "either party may plead and prove a set-off

or counterclaim of the proper nature, in defense of, the liability sought to be enforced by the other party, and it is not necessary that such set-off shall exist as between all parties plaintiff and defendant in such suit, but any party may enforce his set-off or counterclaim against the liability sought to be enforced against him." The foregoing statute is in keeping with the general trend of judicial expression on this subject in the different states of the Union, even where there is no such statute, and in our judgment its passage was prompted by the holding of the Supreme Court in the cases upon which plaintiff relies. It is manifest that it is right. The only inconvenience that could possibly arise from it would be in the matter of procedure at the trial, and this is now generally conceded to be less than the inconvenience which would be brought about by a contrary rule requiring a separate and additional trial. An instructive case upon this proposition, with generous annotations, is found in the 2 Am. & Eng. Ann. Cas. 597, wherein is reported the case of *Wilson v. Exchange Bank,* 122 Ga. 495, 50 S. E. 357, 69 L. R. A. 97. In that case objection that the allowance of the individual set-offs of one or more defendants would give rise to difficulty in the framing of a judgment to fit the facts was answered by the court saying that it was a difficulty more of arithmetic than of law. We can see no good reason in the case at bar, under this statute, why any money due from plaintiff to two of the defendants could not be counterclaimed or set off against her demand against them. Nor do we believe the fact that the plaintiff owed defendants as a partnership in any wise changes this situation. If plaintiff was successful in this action, the claim of the partnership against her would have been concluded, and, as defendants were successful, the claim of the partnership is equally settled. 25 American & English Encyclopædia of Law, at page 571, says:

"The object of the statute authorizing counterclaims is to enable parties to settle and adjust all their cross-claims in a single action, thus avoiding circuity of action and a multiplicity of suits. The statute should be liberally construed to effect this end."

Certain special instructions were requested by counsel for plaintiff, who also requested the court to give to the jury general instructions upon the law of the case, both of which requests were denied. This is alleged as error. It is urged on the part of counsel for plaintiff that the county court, under the provisions of section 12, art. 7, of the Constitution (page 219, Snyder's Annotated Constitution of Oklahoma), was given jurisdiction concurrent with the district court in civil cases in any amount not exceeding $1,000 exclusive of interest, and that, under and by virtue of the vesting of this power, it carried with it in this case district court procedure to the extent that it was the duty of the court to have given to the jury the instruction requested. Section 23 of the Schedule, p. 387, Snyder's Annotated Constitution of Oklahoma, provides that:

"When this Constitution shall go into effect the books, records, papers, and proceedings of the probate court in each county, and all causes and matters of administration and guardianship, and other matters pending therein, shall be transferred to the county court of such county, * * * and the county courts of the respective counties shall proceed to final decree or judgment, order, or other termination in the said several matters and causes as the said probate court might have done if this Constitution had not been adopted."

In order to determine, then, in what manner the county courts shall proceed to final decree or judgment, as the probate courts might have done if the Constitution had not been adopted, where the cause involves a sum within the jurisdiction of a justice of the peace, we turn to section 397, art. 15, c. 22, paragraph 1873, Wilson's Rev. & Ann. St. 1903, which provides that:

"In all cases commenced in said probate courts that are within the jurisdiction of justices courts the practice and proceedings and pleadings both before and after judgment provided for in the justice's procedure of the territory shall be applicable to the practice, pleadings and proceedings of said probate courts."

This section in our judgment made applicable to the probate court the practice and procedure provided for the guidance of justices of the peace in cases within that jurisdiction. To our

minds the giving of instructions or the refusal thereof comes properly within the terms used in this act, of "practice and proceedings."

The word "practice" is defined in volume 6, Words and Phrases, at page 5486, as follows:

"Bouvier defines the word 'practice' as 'the form, manner, and order of conducting and carrying on suits or prosecutions in the courts, through their various stages, according to the principles of law and the rules laid down by the respective courts.' *Fleishman v. Walker,* 91 Ill. 318, 321; *Bowlus v. Brier,* 87 Ind. 391, 395; *Van Aken v. Coldren,* 80 Iowa, 254, 255, 45 N. W. 873, 874; *People v. Raymond,* 186 Ill. 407, 57 N. E. 1066. 1069; *State v. Frazier,* 36 Or. 178, 59 Pac. 5, 7. According to this definition, the word 'practice' means the rules adopted by every court to facilitate the transaction of the business before it in a proper and orderly manner. *Butler v. Young* (U. S.) 4 Fed. Cas. 916, 917. All that relates to the manner and time in which a case shall be conducted and tried, from its inception to final judgment and execution, is generally embraced under the title of 'practice.' *Wright v. State,* 5 Ind. 290, 294, 61 Am. Dec. 90."

The word "proceeding" is defined in volume 6 of Words and Phrases, at page 5632, as follows:

"In *Morewood v. Hollister,* 6 N. Y. (2 Seld.) 309, it is said: 'The term "proceeding," in its more general sense in law, means all steps or measures adopted in the prosecution or defense of an action.' *Gordon v. State,* 4 Kan. 489, 501; *Atchison, T. & S. F. Ry. Co. v. Brassfield,* 51 Kan. 167, 32. Pac. 814, 815. In the above cases it will be seen that the term 'proceedings' is used with reference to something done or to be done in a court of justice. *Hopewell v. State,* 22 Ind. App. 489, 54 N. E. 127, 129. In its most comprehensive sense, the term 'proceeding' includes every step taken in a civil action except the pleadings. *Strom v. Montana Cent. Ry. Co.,* 81 Minn. 346, 84 N. W. 46, 47. See, also, *O'Dea v. Washington County,* 3 Neb. 118, 121; *Wilson v. Macklin,* 7 Neb. 50, 52."

The Supreme Court of the state of Kansas, in the case of *Atchison, T. & S. F. Ry. Co. v. Brassfield,* 51 Kan. 167, 32 Pac. 814, says:

"The charge of the court is a 'proceeding' in a cause, and, where there is a statement in a case-made that it contains all of

the proceedings in the cause, it will be held that all of the instructions are embodied therein."

From the foregoing definitions, in our judgment it is clear that the words "practice and proceedings," as they are used in this statute, would carry to the probate court the rule applicable to instructions as the same obtained under the statute next noticed before justices of the peace. Section 101, art. 8, c. 67, par. 5028, Wilson's Rev. & Ann. St. 1903, provides:

"In all civil actions tried before a jury in justice's court the justice shall determine all questions of law as they arise on the introduction of evidence during the trial, but in no case shall he instruct the jury on questions of law or fact."

We have examined a number of the authorities cited us by counsel on this proposition; but to our minds little could be added by citation and precedent to the strength which these sections of the statute and schedule by their plain language carry within themselves. So it will be seen, from the view which we take of this question, that, at the time of the trial of this cause in the county court, it was the duty of that court to proceed with the same in all respects just as it would have proceeded with it had it been a probate court, operating under the territorial statutes, and had there been no change in the form of government. Hence we conclude that the court did not err in refusing to give instructions requested.

The remaining question in the case relates to the alleged authority under which the defendants Loeb and Watkins claim to have been employed by plaintiff, and under which they claim to have earned their commission. An agent of plaintiff sent to these parties a customer for plaintiff's land with a letter stating that Mrs. Loeb desired them to show this customer the farm, and that she was desirous of paying for their time, trouble, and expense. There was some question as to the power or authority of this agent to grant the terms contained in this letter, although he clearly had authority to write the letters sending the customer to defendants. The evidence was not entirely clear; but we believe it was sufficient to go to the jury. When, in this connection, con-

sideration is given to the fact that plaintiff received the benefit of the service rendered by the parties, and there was evidence fairly tending to support the theory of agency either actual or apparent, the verdict of the jury thereon will be deemed conclusive on this court. Mecham on Agency, § 84.

It is our conclusion therefore, from a careful consideration of all the issues in the entire case, that the trial was conducted in substantial compliance with the law, and the judgment of the court is, accordingly, affirmed.

Hayes, Turner, and Williams, JJ., concur; Kane, C. J., absent and not sitting.